## HARPER *vs.* BIBB & FALKNER, Ex'rs.

[BILL IN EQUITY BY EXECUTORS TO OBTAIN AID OF COURTS IN CONSTRUING WILL
AND EXEUUTING THEIR TRUST.]

1. *Legacy, what creates a general.*—The clause of a will in the following words : ". I give to my friend P. O. H. ten thousand dollars, in notes or in Confederate States bonds, at the option of my executors, hereinafter named," creates a *general*, and not a specific legacy.

2. *Same ; how paid.*—Such a legacy, after ascertaining its pecuniary value at the time it became due. and payable, is entitled to be paid out of the general assets of the estate liable to be applied to the payment of general legacies, either in whole or *pro rata*, in proportion to the sufficiency of such assets. It can not be defeated because of the failure of the notes or Confederate States bonds, in which it was directed to be satisfied.

3. *" Option of executors" ; what can not defeat.*—" The option of the executors" in such a case can not be permitted to be ·exercised to defeat the gift.

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. N. W. COOKE.

THIS was a bill in equity, filed by the executors of W. B. S. Gilmer, deceased, to obtain the aid of the court in construing the will of their testator, so as to enable them properly and safely to execute their trust. The case was brought to this court by appeal from a final decree rendered at the May term, 1867, of the chancery court, and the decree of the court was reversed and the cause was remanded.—*See Gilmer's Legatees v. Gilmer's Executors,* 42 Ala. 11.

Afterwards, the chancellor rendered a decree in accordance with the opinion of the Supreme Court, adjudging, among other things, that the legacy to Harper must either fail or be paid in notes, in whole or in part, at the option of the executors. The clause of the will giving the bequest to Harper is as follows : "Item 13. I give to my friend P. O. Harper ten thousand dollars, in notes or

in Confederate States bonds, at the option of my executors, hereinafter named."

The testator executed his will on the 26th of June, 1863, and the testator died January 5th, 1865, and letters testamentary were duly granted upon his estate, in July, 1865. The testator was a man of wealth, owning a number of rail-road bonds, notes and Confederate bonds, besides real estate. The other clauses of the will need not be here referred to, as they were not of such a character as to influence the decision upon the 13th item.

The decree of the chancellor is now assigned as error.

JUDGE & HOLTZCLAW, for appellant.—1. The decision of the court below, upon the bequests in the 13th, 14th, 15th and 22d items of the will, was erroneous, though based upon and in conformity to the opinion of this court as to the proper construction of said items, when this cause was first in this court.—42 Ala. 9.

When this cause was first here said items of the will received but slight consideration, both from the court and the counsel who argued the cause. The court cited but one authority, (2 Sugden on Powers, 161,) in the brief paragraph of its opinion devoted to these items; and it is respectfully suggested that that authority is but little in point—does not tend to elucidate the true question involved.

2. We contend, 1st, that items 13, 14, 15 and 23 of the will give general, not specific legacies. The testator does not say, " I give to —— ten thousand dollars, in my notes, or in notes held by me, or in Confederate States bonds held by me, at the option of my executors"; but the phraseology is, " I give to my friend —— ten thousand dollars, in notes, or in Confederate States bonds, at the option of my executors," &c. This, according to the weight of authority, makes the legacy general, not specific. In North Carolina, it has been held that a bequest of " twenty-five shares of the capital stock of the State Bank of North Carolina," the testator owning at the time that number of shares in the bank, is a general, not a specific leg-

acy. If the testator had said, "my twenty-five shares," &c., the legacy would have been specific.—*Davis and Wife et al. v. Cain's Ex'r,* 1 Iredell's Eq. 304. This case can not be distinguished in principle from the one now before the court, and it is fully sustained by authority.—1 Roper on Leg. .73, cited in the opinion ; see the case of *Barton v. Cook,* 5 Vesey, Jr., t. p. 463, note *a,* and authorities there cited ; see, also, same case, t. p. 461, and authorities cited in note *a* on said page, showing that the late decisions " have leaned much against specific legacies."

The criterion of a specific legacy is that it is liable to ademption.—*Coleman v. Coleman,* 2 Vesey, Jr., t. p. 641, note 1, and authorities there cited.

It can not be contended, successfully, that the legacies we are considering would be liable to ademption.—See, especially, *Roberts v. Bocock,* 4 Vesey, Jr., t. p. 150 ; *Kirby v. Potter,* 4 Vesey, Jr., t. p. 747, and note *a* on said page, and authorities therein cited.

In the opinion of Chief-Justice WALKER, delivered in this case when it was first in this court, it is demonstrated, both by argument and authority, that the bequests of the will of " dollars ·in Confederate States bonds" are general, not specific legacies. The conclusion, then, announced in that opinion, that such legacies have failed, because Confederate States bonds have failed, is a *non sequitur.*—See opinion of WALKER, C. J., as to the legacy given to Thomas L. Gilmer. If these legacies had been specific, then a failure of the fund would have worked a failure of the legacy. But, being general legacies, with a demonstration of the fund out of which they were to be paid, they do not depend for their validity or value on the sufficiency or existence of the fund specially dedicated for their security. *Gilmer's Legatees v. Gilmer's Ex'rs,* 42 Ala. 15--22.

The conclusion, then, attained by WALKER, C. J., speaking for the court, that these legacies have failed, because the particular fund which was pledged as collateral security for their payment has failed, is erroneous, is, we repeat, a *non sequitur.*

4. But if the above view is erroneous, the legacies here-

inbefore specifically named are valid, at least as to the notes, and they must be good notes, the executors having no right of election which will justify them in paying nothing, the Confederate States bonds being worthless and illegal. The testator intended to give a legacy of value; to say that because the Confederate States bonds are worthless, the executors may, in their discretion, give nothing, would be authorizing them to defeat the will of the testator. The Confederate States bonds were a nonentity from the beginning, and there was nothing upon which the right of election could attach. And the legatees, under the items of the will named, are entitled to their legacies, in good notes, or in money.

JEFFERSON FALKNER, *contra.*—This case stands as on a rehearing. The rule that the former decision is to be the law of the case in all subsequent proceedings has been repealed by the legislature; I presume, however, that this court will not depart from the construction or rule laid down in a previous decision of the same case, and overrule it, unless the former decision is clearly wrong. The able, exhaustive, and lucid opinion of Chief-Justice WALKER in this case, above cited, is a correct exposition of the law.

In this case the appellant presents but a single question, to-wit, the question as to the discretion of the executors under the 13th, 14th, 15th and 22d items of the will. These several sections, in one of which the appellant, Harper, is mentioned, gives legacies to various parties, payable at the discretion of the executors, either in notes or Confederate States bonds. When the case was here before, the supreme court said : " Confederate States bonds being worthless, these legacies must fail, at the option of the executors. The courts will not interfere with the exercise of a discretion," and cites as an authority 2 Sugden on Powers, 161, and says : " The legatees are not entitled to payment in notes, unless by the choice of the executors." We think this is a correct exposition of the law

arising on these several clauses of the will, and is fully sustained by the authorities.

The appellant contends, however, that if it should be concluded that such is the law in reference to "discretion," the law on this subject does not apply in this case.

The language of the 13th item is : "I give to my friend P. O. Harper ten thousand dollars, in notes or in Confederate States bonds, at the option of my executors, hereinafter named." The word "option," according to Worcester, means—" 1st. A wish.   2d. Power or right of election, a choice, election, preference.   Option is spoken of only as it regards one's freedom from external restraint in the act of choosing.   It is left to a person's option, and he may make his choice." According to this definition, an election or choice is conferred on the executors by the will itself, which is to be exercised by them, and no one else ; and unless they refuse to exercise the power thus conferred, no one else, not even a court, can control it or exercise it for them.

In this case the acting executors have not refused to exercise the power conferred upon them, but, on the contrary, the legatee objects to their making the election or choice, or to the carrying out of their "wish" in the case, but insists that the "election" or "choice" shall be made by the legatee.—See 2 Sugden on Powers, 161.

The cases relied on by appellant to support his view of the case are not like the case at bar.

In those cases the legacy is regarded as vested in the legatee, and the trustee having failed to make the election, the courts always in electing, instead of the trustee, (where the trustee fails, and is either dead or has resigned, or has become in any way incapable of making the election,) make such election as is most advantageous to the cestui que trust, or legatee.   But in this case the executors are still acting, and still represent the estate, which is still in process of settlement ; and the object of the bill in this case is to obtain instructions and a judicial construction of the will.   And one of the main questions in the case is the proper construction of the class of legacies to which this

one belongs.—See par. 8 of the bill, on pp. 5 and 6 ; see, also, the answer of appellants to this paragraph, on p. 36 of the record ; see Hill on Trustees, t. p. 740, 741 ; *Waldo v. Colby*, 16 Vesey, Jr., 206, 208, 210 ; *Castabodie v. Castabodie*, 6 Ware, 510 ; Hill on Trustees, t. p. 734, 735, and notes.

The case of *Keates v. Burton*, (14 Vesey,) is not authority in this case, because there one of the executors being dead, and the others having renounced, there was no one left to exercise the discretion.

In this case the legacy is not given in money, but is " ten thousand dollars in notes or Confederate States bonds," not " ten thousand dollars" in currency or coin, but it is to be paid in notes or bonds, and not in dollars ; and we contend that a payment in gold coin would not be a payment under the will. To illustrate : Suppose the will had given the legatee ten thousand dollars in bank stock of some particular bank, and the bank stock had been worth a premium of fifty per cent. It would then have been worth fifteen thousand instead of ten thousand. Now, will any one contend that the executors could have paid such a legacy with ten thousand dollars in gold coin ? We suppose not.

This is a general legacy, payable in a specific thing, and not payable in money, and is, therefore, not like a general legacy with a demonstration as to the fund out of which it is to be paid.

A demonstrative legacy, properly so called, is payable in any event, although the fund mentioned fail, but that is where the legacy is payable in money ; and we insist, therefore, that this case is not within the rule laid down as to demonstrative legacies.

We apprehend that no case can be found where a discretion is vested in an executor or other trustee, that such discretion can be taken from him, if he is capable and willing to act. In this case the legacy is payable at the " option" of the executors, either in notes or Confederate States bonds, and to take that " option" or discretion from them,

would be to set aside the will of the testator, and to substitute for it the will of the court or of the legatee.

If the executors were dead, or had refused to act, then a different rule might apply; but as above stated, in this case the object of the bill is to ascertain the extent of their discretion in the administration of the estate, and we contend that their discretion as to whether they will pay in notes or bonds can not be controlled as long as they are capable and willing to act.

See brief of appellees in this case when here before, 42 Ala. 11, 13, 14, 15.

PETERS, J.—This is a bill in equity filed by the executors of the last will of William B. S. Gilmer, deceased, for the purpose of obtaining the aid of the court in its construction, so that the said executors may be able safely and properly to execute the duties of their trust. The will bears date the 26th day of June, 1863, and it was made and published in this State, and the testator died on the 5th day of January, 1865, in Chambers county, in this State. The clause of the will sought to be construed in this case is in the following words:

"Item 13. I give to my friend P. O. Harper ten thousand dollars in notes or in Confederate States bonds, at the option of my executors hereinafter named."

The first question that presents itself is the technical character of the bequest here intended to be made. Is it to be regarded as a specific or a general legacy? A specific legacy is one that can be separated from the body of the estate and pointed out so as to individualize it, and enable it to be delivered to the legatee as a thing *sui generis*. The testator fixes upon it, as it were, as a label, by which it may be identified and marked for delivery to the owner, and the title to it, as a separate thing, vests at once, on the death of the testator, in the legatee.—*Innis v. Johnson*, 4 Ves. jr., 568, 573; *Kirby v. Potter*, ib. 748, and note *a*, Sumner's ed. When such individualization is not effected by the language of the will, the legacy can hardly be said

36

to be specific. The above *formula* of words does not do this. Then it does not create a specific legacy. We may therefore dismiss any further discussion of bequests of this character, except, perhaps, to add, that courts are averse to construing legacies as specific, when it can be helped.—4 Ves. jr., 568, *supra;* 2 Williams Ex'rs, 840; 2 Harris, 451.

It is also said that legacies are divided into two other classes. These are *demonstrative* legacies and *general* legacies. The former consist of bequests payable out of a particular fund named or *demonstrated* in the will itself. The latter consist of those of "quantity merely, and include all cases not embraced in the other two."—*Myers' Ex'rs v. Myers,* 33 Ala. 85, 88, 89; 2 Williams Ex'rs, marg. p. 993, 994, *et seq.*, 4th Am. ed., and notes; 1 Roper Leg. marg. pp. 190, 191, 192, *et seq.*, 2d Am. ed. 1848. But Mr. Williams, in his learned work on Executors, above referred to, makes only two classes of legacies; the one *specific*, and the other *general.* And upon the distinction thus laid down, depends the solution of many of the very difficult questions attendant upon the construction of wills. The will of the testator is the law of the court; and the intention of the testator, so far as his intention is lawful, is his will. It is, therefore, this intention that we must look for, when we seek to construe his testamentary disposition of his estate. In construing a will, the court is authorized to put itself in the testator's place at the time he made it, and view the surrounding circumstances as the testator probably viewed them himself. If we do this, it is obvious, that he intended to make a very considerable gift of his personal property to his "friend P. O. Harper." He did not propose to make the enjoyment of this gift depend upon a contingency, except upon a deficiency of assets. This is the nature of a general legacy. If there is a sufficiency of assets, it must be paid. If not, then it is to be abated or lessened in proportion to such deficiency of assets to pay legacies.—2 Williams Ex'rs, marg. pp. 996, 997, and notes, Am. ed., *supra.* When this case was here be-

fore, it was determined that this was a general legacy, and not a specific legacy.— *Gilmer's Legatees v. Gilmer's Ex'rs*, 42 Ala. 9, 15, 23. That such a legacy is *demonstrative*, does not seem to alter its character. It is still to be treated as a general legacy.—2 Williams Ex'rs, marg. p. 995, and cases cited; *Balliet's Appeal*, 2 Harris, 451. It is true that the executors were authorized, at their "option," to pay this legacy in one of two ways, but they were not authorized to defeat it altogether. This was not the testator's intention, because the character of the gift forbids it, as I think the foregoing authorities abundantly show. In such a case, if the fund provided for the payment of such a legacy be called in, or fail, the legatee will not be deprived of his legacy, but permitted to receive it out of the general assets.—2 Harris, 451, *supra ; Chaworth v. Beech*, 4 Ves. jr. 555, 564; 2 Williams Ex'rs, 995, and authorities in note *q*. Here there were two funds. If one failed, it did not defeat the gift. The executors should have paid it out of the other. If that failed, then they should have paid it out of the general assets for the payment of legacies. *Davis and Wife v. Cain's Ex'r*, 1 Iredell Ch. R. 304; and cases *supra*. It is very evident that the testator did not look upon the "notes" mentioned in his will, or the "Confederate States bonds," as wholly worthless securities. He thought them about equal in pecuniary estimate. And he did not intend to impose either upon his "friend" as things wholly destitute of any money value whatever. He did not intend that if he died without "notes" or "Confederate States bonds" to satisfy this bequest, his benefaction to his "friend" should wholly fail, because this would have made the legacy specific, and not general, as it evidently is.

The court here intervenes and directs the execution of a trust upon like principle that it does upon the execution of a power; that is, to prevent a legacy from failing which the testator, at the time he made his will, did not intend should fail. Besides, if the executors can use their "option," as contended for by appellees' counsel, they may pay some of the legacies, like this mentioned in the will,

with "notes," and defeat others with a simulated payment in the worthless "Confederate bonds." This is certainly not the power intended to be given by the testator.

This legacy may be paid in "notes," if there are "notes" belonging to the estate of said testator, with which the executors may satisfy the same. And if there are no "notes" available for this purpose, the learned chancellor in the court below will ascertain the pecuniary value of said legacy to said P. O. Harper at the time the same became due and payable to said legatee, and cause the same to be paid, in whole or in part, according to the sufficiency of assets for the payment of general legacies, under the directions of said will of said testator.