Brown et al. Ex'rs vs. Weaver et al.

28 377
f110 720
d110 732
28 377
113 211

BROWN et al. Ex'rs *vs.* WEAVER et al.

1. A will should be so construed, if possible, as to give effect to every part; and hence, words which make a plain inequality between sons, on the one hand and daughters on the other, will not be overruled by other words, unless the latter words are incompatible with the first.

2. A bequest to daughters and their children, the daughters having no children in life at the time of the bequest, and if they shall die without issue then over—would create an estate tail in real estate, and hence under our law creates an estate absolute passing to the husbands on marriage ; and such husbands having received such estate consisting in part of proceeds of a sale of land, and having for many years acquiesced in such sale, cannot afterwards set it aside on the ground that the executor was a purchaser at his own sale, the sale having been a fair one at the time.

In Equity, in Walton superior court. Decision by Judge HUTCHINS, February Term, 1859.

This was a bill in equity for discovery, account and distribution in Walton superior court, tried before Judge Hutchins at the February Term, 1859. The case comes on an agreed state of facts. George R. Brown died, leaving a will, of which the following is a copy, so far as relates to the issues in this case : " Item 2d. I give and bequeath unto my beloved wife during her widowhood all my property, real and personal, subject, however, to the provisions hereinafter mentioned, &c. ·

Item 3rd. I have heretofore given and I now convey and confirm unto my son Samuel A. Brown, land, &c., valued at three hundred and fifty dollars.

Item 4th. It is my will and desire that if my sons William, John and George should marry, or wish to settle themslves before the death of my wife, then and in that event, my wife shall give off and assign to each of them a fraction of land and other property equal in value to that given to their brother Samuel, and to my son George a horse, saddle and bridle, equal in value to that heretofore given to his brothers William and John. As my aforesaid sons shall marry, my wife shall loan to each of them such negro boy as she can most conveniently spare, to be kept by my said sons till the death of my said wife, provided they all live here.

Item 6th. It is my will and desire that as each of my

Brown et al. Ex'rs vs. Weaver et al.

daughters Mary, Jane, Margaret and Elizabeth shall marry, my wife shall give off to each of them respectively a portion of property equal in value to that heretofore given to their sister Nancy, with a good horse, saddle and bridle, and at the same time my wife shall loan to each of my said daughters such negro girl as she can most conveniently spare, to be kept by my said daughters till the death of my wife, provided they outlive her.

Item 7th. It is my will and desire that if my wife shall ever marry again she receives an equal share of my estate with my children, &c.

Item 8th. It is my will and desire that at the death of my wife, my children, to-wit: Margaret, Jane, William, John, Mary, George and Elizabeth have been made equal *as aforesaid*, with their said brother Samuel and sister Nancy; the balance which may then remain, shall be equally divided share and share alike between my said children, Samuel, Mary, Jane, William, John, Margaret, George and Elizabeth," and the children of Nancy to take her share.

"Item 9th. I desire that upon the death of my wife, each of the negroes so loaned as aforesaid, shall, with the issue of such negroes be brought back into my estate to be equally divided as my other property as aforesaid.

Item 10th. I hereby nominate my two sons, Willian and John trustees for my daughters Mary, Jane, Margaret and Elizabeth, and I desire that the portions to come to them as hereinbefore mentioned, shall pass to and vest in the said trustees for the use of my said daughters and their children, and if my said daughters die without issue then their said property to revert to my estate to be divided among my then surviving children."

Margaret, (who with her husband is one of the complainants,) and Elizabeth, (whose son suing by his father father and guardian is the only other complainant,) had no children when the will was made. In 1848 the execu-

tors under an order from the court of ordinary, sold the real estate; and two of them, William and John, became purchasers. The sale was a fair one and the land brought its fair price at the time. Both Margaret and Elizabeth were married many years before the commencement of this suit. The executors divided out the estate, (the widow having died without marrying again,) in the first place making each of the sons equal with Samuel, and each of the daughters equal with Nancy, and then dividing the remainder equally among sons and daughters alike, and in the settlement turning over to the trustees of the daughters their parts of the proceeds of the lands. This bill was brought to undo this division and procure an equal division of the entire estate among sons and daughters alike, and also to set aside the sale of the land. Judge Hutchins held that the complainants were entitled to such equal division of the entire estate, but held that the sale of land could not now be disturbed. The executors, who were defendants in the bill, excepted to the ruling on the first point, and both parties ask a decision on the last point.

*By the Court.*—STEPHENS, J., delivering the opinion.

1. We think the words of this will clearly express the idea, that in the first place, all the sons besides Samuel shall be made equal with him when they marry or settle in life; and that all the daughters besides Nancy shall be made equal with her when they marry, and then the residue of the estate is to be equally divided among all, sons and daughters alike. Nor can the effect of these words be overruled by certain other words directing that the wife, in the event of her subsequent marriage, shall have an equal part with the children. The implication sought to be drawn from these last words is, that the wife is to be equal with *each* of the children, and that, therefore,

each of the children must be equal with every other one. It is enough to say that this direction applies only in case of the marriage of the wife, and she died without marrying. The testator makes a difference between his sons and his daughters, and the words which are claimed to have done away this difference and introduced equality as the rule, were not to have any effect at all unless the widow should marry. It is no valid objection to this construction to say that, to make the equality of his sons and daughters with one another depend upon the mere marriage of his wife, would be a whimsical notion in the testator. Testators have a right to indulge even their whims. But we think the natural construction of the words when considered with reference to their collocation and the context, is not that the wife, (in the event of her marriage,) was to be made equal with *each* child, but simply that she was to have a *child's part*, leaving the remainder to be divided among sons as one class and daughters as another class, according to the clear directions expressed in the other parts of the will. This construction relieves the will from the imputation of whimsicalness, and makes it consistent throughout. We think the court erred in adopting a construction which makes different portions of the will conflict with each other, while there is a construction which makes all harmonious and all rational.

2. The executor's sale was a fair one, and we concur with the court below in thinking that the acquiescence in it has been too long to allow it to be disturbed now. This acquiescence has been given by the husbands of Margaret and Elizabeth, who are the real owners of the interests claimed by the complainants. The legacy to them and their children, and if they should die without issue then over, would be an estate tail in real property and therefore, by our law is an absolute estate in Margaret and Elizabeth, and passed to their husbands on mar-

riage. The acquiescence, therefore, on the part of the husbands, was by persons who held the legal interest, and having extended as it has through many years, it ought to preclude any disturbance of the sale at this late day on the ground that the executors were purchasers at it.

Judgment reversed.