## MORTON *vs.* MURRELL *et al.*

68  141
115  896

1. The courts are not inclined to construe a legacy to be specific, where the question is in doubt.

2. The cardinal rule of construction of wills is to seek the intention of the testator.

3. A testator made the following provisions in his will:    After providing for the payment of his debts, he bequeathed certain specified property to his wife for life, and at her death to be equally divided

between his three children. He declared that he had given to his son, W. H. M., property which he valued at $10,000. He left to his other two children, share and share alike, certain land and all the money and evidences of debt of which he might die possessed, after paying physicians' bills and funeral expenses. By a codicil, he declared that, having given to his other two children each $1,500.00, he then bequeathed unto his said son $1,500.00 "to be raised out of my estate before the final division between him and his brother and sister," after the death of the wife; but should testator before his death give said son $1,500.00 and take his receipt therefor, the legacy was to become void, as it was declared to be made to equalize the children:

*Held*, that the legacy was general. not specific, and would have to contribute to the payment of debts with the other general legacies.

Wills. Legacies. Before Judge ERWIN. Clarke Superior Court. May Term, 1881.

Reported in the decision.

POPE BARROW, for plaintiff in error.

JACKSON & THOMAS, for defendants.

SPEER, Justice.

Joseph F. Morton, of the county of Clarke, died in the year 187—, testate, leaving a will and codicil of which the following are copies, and which were duly proved and admitted to record:

"GEORGIA—Clarke County.

In the name of God, Amen. I, Joseph F. Morton, of the county and state aforesaid, do make, publish and declare this to be my last will and testament, hereby revoking all wills by me heretofore made.

Item 1st. I commend my soul to God, who gave it, and my body to my family and friends, to be buried in a plain, decent manner.

Item 2d. I wish all my just debts (if any) paid.

Item 3d. I give and bequeath unto my beloved wife, Mildred E. Morton, the homestead on Shoal Creek, in said county, and also on Big Creek, containing two thousand one hundred acres, more or less, with the appurtenances thereon, and also the stock of all kind, viz: horses, mules, cattle, hogs, sheep, etc., of which I may die seized and

possessed, also all my household and kitchen furniture, and also all the provisions and crops on hand at the time of my death, and the growing crop if unmatured at same time for and during her natural life, and at her death to be disposed of as hereinafter provided, giving to my wife full power and authority at any time to sell, dispose of or exchange any of the stock at her option and discretion.

Item 4th.   I have already given my son, William Henry Morton, property which I value at ten thousand dollars.

Item 5th.   I give and bequeathe unto my son, Clinton Parks Morton, and my daughter, Leila Wade Morton, equally, the Lampkin and Thomas tracts of land on the waters of Trail and Shoal creeks in said county, containing fourteen hundred acres, more or less, and all money and evidences of debt of which I may die seized and possessed, after paying physicians' bills and funeral expenses, to be equally divided between them, share and share alike.

Item 6th.   At the death of my wife I give and bequeath unto my three children, Clinton Parks, William Henry, and Leila Wade, all the land and property of every kind left by her to be equally divided between them, share and share alike.

Item 7th.   I hereby nominate and appoint Mildred E. Morton, executrix of this my last will and testament, hereby exempting her from making inventory or appraisement, or making any return whatever. In testimony whereof, I, the said Joseph F. Morton, have hereunto set my hand and seal.   This twelfth day of July, 1873.

J. F. MORTON, [Seal.]"

"STATE OF GEORGIA—Clarke County.

In the name of God, Amen.   I, Joseph F. Morton, being of sound and disposing mind and memory, do make, ordain, publish and declare this to be a codicil to this my last will and testament.

Item 1st.   Having valued the property given to my son, William Henry Morton, at a full valuation, and having given my son, Clinton Parks Morton, and my daughter, Leila Wade Morton, each fifteen hundred dollars, I now give and bequeath unto my said son, William Henry Morton, the additional sum of fifteen hundred dollars to be raised out of my estate and paid to him before the final division between him and his brother and sister, as provided for in the sixth item of my last will and testament, and after that the division to be equal between them as therein stated.   But if I pay or give to my said son, William Henry Morton, before my death the said sum of fifteen hundred dollars and take his receipt therefor, then this bequest to be void, as I make it to make my children equal and to guard (against) any sudden demise should I die before I give my said son, William Henry Morton, the sum of fifteen hundred dollars.   In testimony, etc., etc.   21st December, 1874."

Mrs. Mildred E. Morton, the nominated executrix, duly qualified under said will and assumed the duty of executing the same.

In March, 1879, Leila Wade Murrell (formerly Morton) and her husband, George T. Murrell, and Clinton Parks Morton, filed their bill in Clarke superior court for settlement, relief and discovery against the executrix, Mildred E. Morton, and William Henry Morton.

The object of the bill appears to have been originally to have a settlement of the estate of the testator and an accounting on the part of the executrix; but so far as the case was presented and argued here, there is but one question presented for our consideration and judgment. The facts were agreed upon, and the chancellor it was consented should render his decree upon those facts. It is agreed that at the time of testator's death he was indebted, over and above physician's bills and funeral expenses, in the sum of thirteen hundred and eighty-nine dollars and forty cents; that the residuum of assets in the hands of the executrix not disposed of by the will, amounted to three hundred and seventy-five dollars, and which when applied to the debts left the sum of one thousand and fourteen dollars and forty cents to be paid out of the general legacies under the will.

Complainants below insisted that the legacy of fifteen hundred dollars given to William Henry Morton was a general legacy, and subject to contribute its *pro rata* share to the discharge of said indebtedness, and as said indebtedness had been paid out of the assets, such as money, notes, etc., bequeathed to them, they seek a decree that before said legacy of fifteen hundred dollars to William Henry Morton is paid, the same should abate by the sum of three hundred and thirty-eight dollars and fifteen cents in their favor, that being the proportion that has been paid out of these legacies for the benefit of said William H. Morton. William Henry insists that his legacy is not subject to abate, that it is in the nature of a specific legacy, and is

entitled to be paid in full, and is not primarily chargeable with the debts of the estate.   Under this statement of facts the case was submitted to the court without the intervention of a jury, who decreed in favor of the complainants below, that the legacy of $1,500.00 bequeathed was chargeable with its *pro rata* share of said indebtedness and should abate accordingly.   To this decision plaintiff in error excepted, and assigns the same as error.

Whether the ruling of the court was right depends upon the construction of the will, under which both parties assert their rights.   The cardinal rule touching the construction of legacies is "for the court to seek diligently for the intention of the testator and to give effect to the same so far as it may be consistent with the rules of law."

The testator in the second item desires all his just debts (if any) to be paid.   In the fifth item he gives to his son, C. P. Morton, and his daughter, Leila Wade Morton, his lands on the waters of Trail and Shoal creeks, "and all moneys and evidences of debt of which he may die seized and possessed, after paying physicians' bills and funeral expenses, to be equally divided between them, share and share alike."   It is manifest that as to this class of debts, physicians' bills and funeral expenses, he intended to charge their payment upon this bequest to these two children.

By the fourth item he declares that he "has already given to William Henry Morton property to the value of ten thousand dollars," and by the will nothing further is given him except an equal interest in remainder with the other two children in the property given to the wife during her natural life, as found in the third item.   Such are the terms of the will executed on the twelfth day of July, 1873.   But on the 21st of December, 1874, he executes a codicil, and his reason for so doing is evident.   He declares in the codicil: "Having given to my son, William Henry Morton, property at a full valuation, and having given my son, Clinton Parks Morton, and my daughter,

Leila Wade Morton, each fifteen hundred dollars, I now give and bequeath to my son, William Henry Morton, the additional sum of fifteen hundred dollars to be raised out of my estate and paid to him before the final division between him and his brother and sister as provided for in the sixth item of my last will and testament, and after that the division to be equal between them, as therein stated. But if I pay or give to my son, William Henry Morton before my death the said sum of fifteen hundred dollars and take his receipt therefor, then this bequest to be void, as I made it to make my children equal, and to guard against any sudden demise should I die before I give my said son William Henry Morton, the sum of fifteen hundred dollars."

It is very clear that the testamentary scheme of the testator, both as to present as well as the prospective interests he was disposing of, that equality among his children was a paramount and controlling purpose. It is fair to presume that after the making of the will he advanced to his other two children each the sum of fifteen hundred dollars, and the codicil is evidently executed with a view to restore equality to William Henry in his estate by reason of this gift. The question is then, what is the nature of the legacy to him under this codicil? Is it a general legacy? or is it in the nature of a specific legacy, and not subject to abate with general legacies to pay debts?

The codicil declares that the $1,500.00 are to be raised out of his estate, and to be paid to him before the final distribution takes place as provided for in the sixth item of the will.

Counsel for plaintiff in error insists that this is a legacy in the nature of a specific legacy. This was called by the civilians a demonstrative legacy, and did not abate as general legacies to the payment of debts. But our Code declares "that a gift of money to be paid from a specified fund is nevertheless a general legacy." Code, §2458. The courts in general are averse to construing legacies to be

specific, and the intention of the testator with reference to the thing bequeathed must be clear. 2 Wms. on Exrs., 996; 4 Ves., 748; 4 *Ib*., 568; 8 *Ib*., 413. Neither will a money legacy be rendered specific by its postponement until a particular investment of a fund takes place, as where a bequest is to A and B of £1000 each, "which legacies I direct to be paid as soon as my property in India shall be realized in England." 2 Wms. Exrs., 996; 8 Ves., 617; 6 Ves., 199.

"A specific legacy is one which operates on property particularly designated." Here the legacy "is to be raised from his estate," no particular property being designated to pay it. But apart from these views and authorities, we are satisfied the testamentary scheme of the testator was equality in his bounty to his children. His language on this point cannot be misunderstood. The codicil was but the offspring of this testamentary intent. This purpose the courts should never disappoint, when it is clear, and under its guidance wills should be so construed as to give effect to every part. 28 *Ga*., 377. And they always lean to such construction as will dispose of the property in accordance with the statute of distributions. 27 *Geo*., 324. To hold that the legacy of plaintiff in error under this codicil is specific will be to disappoint the intent expressed in the same paper, which declares his purpose in making it "is to make his children equal.".

We see, therefore, no error in the judgment and decree of the court as pronounced by him.

Judgment affirmed.