EZELL *et al. v.* HEAD *et al.*

Where, after otherwise disposing of a portion of his property, a testator devised and bequeathed to his wife for life the *residuum* of his estate, charging certain slave property thus bequeathed with a trust in favor of his minor children, to the extent of requiring her to advance to each of such minor children, upon marriage or attaining majority, a slave at a valuation to be fixed by appraisement, the testator out of his slave property having already made advancements at stated valuations to certain of his other children, for which they were each severally required to account, the testator further providing that in the final division of his estate all of his children should be made equal; but before certain of the children received the slave property to which they were entitled, all slaves were emancipated as a result of the late civil war, and thus ceased to

be property: *Held*, that the legal effect of the provision in favor of the minor children was to make their several legacies a charge upon the slave property only; that when this property was extinguished, the legacies of such of them as had not been paid were destroyed, the loss of the slaves falling equally upon all of the children; and inasmuch as the plan of equalization, as outlined in the testator's will was dependent upon the continued existence of slavery, emancipation rendered such equalization, under the testamentary scheme, impracticable; and hence neither the children to whom advancements in slave property had been made either by the testator or the widow, nor the representatives of these children, were required to account for such advancements in the final distribution of the testator's estate.

November 9, 1896. Argued at the last term.

Petition for direction, etc.   Before Judge Hart.   Morgan superior court.   September term, 1895.

John Orr, administrator with the will annexed of James Head, filed his petition for direction as to the administration of the assets of the estate.   Miss Mary D. Head and others, legatees, were parties defendant.   The case was submitted to the judge without a jury, and was decided upon the facts appearing and admitted in the petition and answers.   The judge held:   (1) That Mrs. Sarah Ezell, wife of John Ezell, had received from the estate of the testator property to the value of $950, with which she was chargeable as an advancement, and for which she must account before she could take part in the distribution of the estate.   (2) That John Head, through whom Mrs. S. E. Gresham, Mrs. Cornelia Pitts and H. W. Rhymes claim an interest in the estate, received property to the value of $950 from the estate, with which sum said Mrs. Gresham *et al.* were chargeable and for which they must account. (3) That Mrs. Pierce, the mother of Mrs. Orr, Mrs. McGibbony, Mrs. Lemons, Mrs. Bone, Thomas and John Fears, and the grandmother of Fears, Frank and Mamie Orr, children of Katie Orr, deceased, and John Orr, also the mother of Mrs. Lula White, deceased, who left as her heir at law Thomas B. White, also the grandmother of

36

Henry Griffin, son of Mrs. Labonia Griffin, deceased, that she the said Mrs. Martha R. Fears received from the estate property of the value of $950, with which sum her said descendants and heirs at law were chargeable and for which they must account. (4) Similar charge to the amount of $850 as against Cora E. and Mamie A. Palmer and Mrs. E. P. Earle, children of Mrs. Nancy Palmer. (5) That Mrs. Mary V. Head, W. R. Head, A. A. Bell administrator of Marcus A. Head, Mrs. Sidney Patrick and Mrs. Elizabeth Stafford, each a legatee of James Head, had received nothing for which they should be compelled to account and should be made equal in advancements with the legatees and distributees above named; and that after being so made equal the administrator should distribute the balance of the estate, if any, to each and all of the above named legatees and distributees share and share alike.

Mrs. E. P. Earle, Cora E. and Mamie A. Palmer, Mrs. Cornelia V. Pitts, H. W. Rhymes, Mrs. Mattie Bone, Mrs. Maggie Lemons, Mrs. Cornelia Orr and Tom Fears excepted to this judgment, claiming that the will of James Head, by items 4th, 5th, 6th and 7th thereof, either created a trust estate in certain of his negro property for his children, his wife being trustee, with delivery of possession postponed; or that his wife Nancy C. Head took a life-estate in said negroes, but on the performance of a condition precedent by certain of his children said life-estate was liable to be determined as to certain of said negroes and vest the title to them immediately in said children. Wherefore they assign the 5th division of said judgment, which decreed that the legatees therein named should be made equal with these defendants who received such negro property under and in accordance with the will, before any distribution of the estate should take place, as error.

The petition of the administrator alleged: In 1859 James Head, Sr., died testate. Copy of his will is attached. In March, 1859, Nancy E. Head, one of the

executors named, qualified, but the other executor failed to qualify. Except the special legacies mentioned in item 3 of the will and the advancements mentioned in item 4, Nancy E. Head, the life-tenant under the will, took possession of all of testator's property and retained the same under the fifth item of the will until her death in 1892, never having remarried after the death of her husband the testator. In 1892 petitioner was appointed administrator with the will annexed, and took possession of the entire estate remaining after the expiration of the life-estate, which consisted solely of a tract of land described. He received as rent for the land for 1893 $416.67, and in December, 1893, sold the land under order of the court of ordinary, realizing from the sale certain money and purchase-money notes set forth. The fund is chargeable with no debts save the expenses of administration, and is subject to distribution among the legatees; and this petition is brought for direction for the following reasons: There are certain legatees and those representing legatees, to wit: Miss Mary D. Head, W. R. Head, A. A. Bell administrator of M. A. Head, Mrs. Sidney Patrick formerly Head, and Elizabeth Stafford, who claim that all the other legatees under the will have received advancements for which they should account under the 7th item of the will, aggregating more than petitioner has on hand or will have when the purchase-money notes have been collected. On the other hand, legatees who it is claimed received such advancements, and those representing them, say that the above named legatees, with possibly the exception of W. R. Head and Mrs. Patrick, either received advancements or should have done so under the will, and neglecting to require the executors, said life-tenant, to make such advancements to them, are now barred from any right to be made equal before distribution of the estate. The petition prayed that all parties in interest be made parties and required to interplead. The present living children of testator, who

took the remainder interest in his estate, are, Mrs. Ezell, Mrs. Stafford, Mrs. Patrick, Miss Mary D. Head and W. R. Head. ` The deceased children of testator who took a remainder interest, and those representing them, are, M. A. Head represented by his administrator A. A. Bell; Martha P. Fears who is dead, leaving surviving her Mrs. Cornelia Orr, Mrs. Rebecca McGibbony, Mrs. Maggie Lemons, Mrs. Mattie Bone, Thomas Fears and John Fears; and the deceased children of Mrs. Fears are Mrs. Katie Orr who died intestate, leaving as her heirs at law John Orr, Fears, Frank and Mamie Orr, and, second, Mrs. Lula White who died intestate, leaving as her heirs at law Thomas B. White, — White, and possibly other children; third, Mrs. Labonia Griffin who died intestate leaving as her heir at law Henry Griffin; Nancy Palmer, one of the children of testator died intestate, leaving Cora Palmer and other children named surviving her as her heirs at law; J. M. Head, one of testator's children, died testate, bequeathing his entire interest in the estate to his mother for life and after her death to be equally divided between his six sisters above named, and copy of his will is attached; John Head, one of testator's children, died intestate, leaving as his sole heir at law his wife, who has since died intestate, leaving as her heirs at law Mrs. S. E. Gresham, Mrs. Cornelia Pitts and H. W. Rhymes.

The first two items of the will of James Head directed the burial of his body and the payment of his debts. The material substance of the other items is as follows: (3) Having heretofore given to my son James B. Head $500, a negro boy named Edward, and certain personalty, which he has received, and I consider it to be an equal half share of the property which I received from his mother's estate; and to Thomas W. Head two negroes Henry and Neely, $150 and certain personalty, all of which he has received, and considered by me as his share of the property I received by his mother, I further will them each one

equal share of all the negro property which I may die pos-
sessed of, the share of said negroes which Thomas W. shall
receive to him during life, and if he should die leaving no
child or children, then to the child or children of James
B., and that share of the negroes to which James B. may
be entitled I give to him in trust for his child or children,
and at his death, should they be minors, another trustee to
be appointed for them, and when the youngest child be-
comes of age or marries, should James B. be dead, then an
equal division of said negroes among all his children.    I
also give James B. and Thomas W. a lot of land (describ-
ing it) to be equally divided between them, and under the
same restrictions as attached to the bequest of the negroes.
(4) Having loaned my daughter Martha P. Fears a negro
girl named Caroline and certain personalty which I value
at $950, and to my daughter Sarah T. Baldwin a negro girl
named Matilda and certain personalty which I consider val-
ued at $950, and to my daughter Nancy Palmer a negro
girl named Jane and personalty which I prize at $850,—
the price of the three negroes, say $2,700, is to be taken
into consideration at the time of the appraisement of my
negroes for the purpose of giving to my sons James and
Thomas their portion of the said negroes, as I consider the
two negroes above loaned to be a part of what I now own,
and to them nothing more of my estate.    (5) All the rest
of my lands, negroes, and every other property I bequeath
to my wife for and during her life and widowhood, and in
case of marrying she to have one equal share of my estate
(after two shares of negroes which I have willed to my
two sons are first to be taken out) with all my children by
her, and as my children become of age or marry it is my
will that my wife give off to said child or children a negro
to each at appraised value, and at the death of my wife or
marriage the whole to be equally divided between my ten
last children.    (6) All the shares to which my daughters
shall be entitled are to them separate and free of any debt

of their present or future husband, for their and their child and children's sole and separate use and benefit. (7) It is my will that my last ten children all be made equal; the property which I have loaned to my married daughters is to be accounted for by them in their division.

Mrs. Patrick answered: She is one of the ten provided for in items 5, 6 and 7. She was fourteen years old when testator died, and became of age April 6, 1865. She never received under item five a negro or the value thereof or any other property from the estate, nor has she at any time ever received any property from the estate. The negro property of the testator at the probate of the will was appraised at sums given, there being forty-three negroes, Matilda appraised at $350, Caroline at $500, and the other negroes specifically named in the will do not appear as named in the appraisement. James B. and Thomas W. Head each received his portion of the negro property under item four. Mrs. Ezell, Mrs. Fears, Mrs. Palmer, James M. and John Head each received negro property, the first three from the testator before his death and the other two under the provisions of the will; said property was to be accounted for as provided in the will; and respondent prays that they might be required to account for the same. The property still belonging to the estate and in the hands of the administrator is insufficient to make this defendant and the other children of testator, who did not receive negro property under the will, equal with Mrs. Ezell, Mrs. Fears, Mrs. Palmer, J. M. and John Head; and said parties named are not entitled to participate in the distribution of the funds in the hands of the administrator. The answers of Mrs. Stafford and W. R. Head were similar to the answer of Mrs. Patrick, except that Mrs. Stafford attained majority July 1, 1862, and W. R. Head November 9, 1866.

Tom Fears, Mrs. Bone, Mrs. Lemons and Mrs. Orr answered: They acknowledge the receipt of one negro girl

named Caroline by their mother Martha R. Head, by way
of advancement, and certain personalty, all amounting to
$950; but it would not be fair or equitable for those who
received no such advancement as a negro to now be made
equal before any distribution, because the will directs that
each child as they become of age or marry shall receive
a negro from the executrix, and by the will title to the
negroes vested in testator's children, with the delivery of
possession postponed.   Further, a failure on the part of
those who became of age or married before 1865 to demand
of the executrix the negroes to which they were entitled,
would of itself estop them from being made equal.   Mrs.
Earle *et al.*, heirs at law of Mrs. Nancy Palmer, made
similar answer, save that they acknowledge advancement
to Mrs. Palmer of the value of $850.   Mrs. Ezell made
similar answer, acknowledging advancement of property
of the value of $950; and the heirs at law of John W.
Head made similar answers.

*Joshua Hill,* for plaintiffs in error.
*George & George,* contra.

ATKINSON, Justice.

The one great object to be attained in the construction
of wills is to give effect to the intention of the testator as
manifested in the testamentary scheme outlined therein.
In order to ascertain his intention, it is proper to look to the
circumstances surrounding him at the time of the execution
of the will, the nature and character of the various prop-
erties disposed of by him, to the objects of his bounty, and
as well to the manner in which and the means by which
his wishes with respect to his property are to be carried into
effect.   A careful examination of the will which we are
now called upon to construe leaves little doubt in our minds
as to what was the real intent and purpose of the testator.
He was possessed of a considerable estate, consisting of
lands and negroes.   His will was executed in the year

1859. Before his death, out of that portion of his personal property consisting of negroes, he had made advances to certain of his children, and after certain other bequests and devises concerning which in the present case there is no question, he bequeathed and devised to his wife all the rest of his lands, negroes and other property, during her life or widowhood, with the further direction to his wife, that as his children became of age his wife should give off to each of them a negro at appraised value. This special bequest was not left to the discretion of the wife, nor are the words creating it merely precatory or recommendatory; upon the contrary, it is directory. He says, "and as my children become of age or marry, it is my will that my wife give off to such child or children a negro at appraised value." The effect of this testamentary direction was to vest in each child a present existing interest in the thing to be delivered, and the right of possession postponed until the happening of the particular event fixed in the bequest. The life-tenant took her estate subject to this testamentary direction. Nor was it left to the discretion of the child whether he would accept as a part of his distributive share in the testator's estate the property directed to be delivered to him in accordance with this special bequest. Out of the negro property owned by him, the testator had already made advances to some of his heirs. In pursuance of the direction contained in this special bequest, the wife had already, out of the negro property, made advancements to certain other of the children as they married or arrived at their majority; and but for the happening of an unforeseen event the occurrence of which the testator could not possibly have anticipated, his testamentary purpose would have been carried into practical operation, and out of the negro property each one of the heirs would have received substantial and equal advancements before the time arrived for the distribution of the general estate of the testator. It so happened, however, that in consequence of the emancipa-

tion of these slaves, the resulting misfortune falling equally upon each of the children of the testator, those to whom advancements had actually been made out of the negro property, and those entitled to have advancements made out of that particular class of property, the entire property, under which the scheme of equalization as outlined in the testator's will was to be carried into effect, was absolutely swept away. When, therefore, we come to consider the declaration of the testator, that in the final distribution of his estate each of his heirs should receive an equal proportion and each accounting for advancements, we must construe this section in the light of the scheme of equalization projected in the will. We are not to assume that the testator intended that, without reference to subsequent events as they actually transpired, there should be an absolute equality between the various devisees in the distribution of the *residuum* of his estate.

As we have seen, the advancements to be accounted for were made out of the negro property, and the advancements to be made were likewise charged upon that particular class of property, and there was no authority under the will for the executor to have made advancements to any child as it became of age or married, except out of that particular property. The provisions for these advancements were in the nature of a specific legacy, not to be paid in money, but to be paid in a particular class of property, which before its delivery was absolutely destroyed, not by natural causes, but by operation of law. So that it would have been absolutely impossible for the executor, out of the general fund, to have purchased other property of like kind, and delivered it in lieu of that mentioned in the special bequest. The result of emancipation was the absolute annihilation of the negro as a chattel. He was no longer the subject of property right, and therefore when the class of property upon which the right of advancement in the minor devisees was made a special charge was itself absolutely extinguished,

that in law extinguished the right to the advancement. In the case of *Tennille* v. *Phelps*, 49 *Ga*. 532, this court says: "It is unquestionably true that a testator may so charge a money legacy upon a particular fund as to make the legacy follow the fate of the fund." If this be true with respect to a money legacy, how can it be questioned as applied to a legacy which is to be paid, not in money, but in kind, and is to be discharged by the delivery to the legatee of a particular piece of property to be selected by him at its appraised value out of property of a particular class belonging to the testator? Surely if that class of property should be utterly destroyed by law, as was done in the present case, the legacy should be made to follow the fate of the fund; otherwise the court denies to the testator the right of the free distribution of his property according to his own wishes. The case to which we have just referred is in principle very similar to the case now under consideration, and rests upon principles similar to those which we have sought to apply here. In that case the testatrix made her will in 1863 and died. By one item of her will she directed her executors to keep up a certain plantation and work her slaves thereon, expressing a desire that this should be done for the purpose which she would thereinafter mention. In the same item she directed her executors, that in case the plantation should be unprofitable, or there should be danger of loss or depreciation, to sell the same, and in their discretion to reinvest the proceeds. In the next item of her will she made bequests of certain amounts of money to her nieces and nephews, to be paid out of the income of the plantation (without interest), after paying all expenses arising from its prudent management. The *corpus* of her estate she devised to her son. In the following year the slaves were emancipated as the result of the war. It became unprofitable to work them upon the plantation in accordance with the testamentary scheme. In that case it was held, that the testatrix intended that the legacies to be

paid the nephews' and nieces should be a charge only upon the fund realized in the manner therein pointed out, and inasmuch as, in consequence of the emancipation of the slaves, it was impossible to realize the fund, the legacies were destroyed, and that the residuary legatee took the estate freed from any charge in favor of the nieces and nephews.

The Supreme Court of North Carolina, in the case of Kelly *v.* McCallum, 83 N. C. 563, in the course of a well considered opinion delivered in a case wherein a testator devised and bequeathed lands and slaves to his wife, indicating in the will his intention that the property should be finally divided equally between the widow and children, but leaving it discretionary with the widow to advance to the children at such times and in such kinds of property as her best judgment might dictate, and the widow advanced to two of the children some slave property, and more than their aliquot portions of the land, with the expectation of supplying the deficiency from the undivided slave property, which was amply sufficient for that purpose, held, "that an unexpected emancipation of the slaves by the result of the war would not sustain a claim of the other children to have a redivision of the land, and an account from the two children first advanced of the slave property received by them." In the course of its opinion upon that subject, the court reasons as follows: "There was reserved by the devisee and legatee, upon whom the trust of making an equal distribution is imposed by the testator, a large number of slaves, more than enough to make the plaintiffs equal to the others, and their right to be made equal out of those reserved, had the slaves remained property, upon such construction of the will is clear and undisputed. But the right of the *feme* plaintiff to this equal prior allotment passed away with the extinction of the property in slaves, and the other children of the testator suffer from the same cause the loss of theirs. Is it in consonance with his ex-

pressed will that the loss, common to all, and which could be averted by none, should be borne alone by those who had been advanced, and made up in part, at least, to the other out of his land?"

We are fully persuaded in the case now under consideration, that the testator intended to set apart and designate the slave property as the particular portion of his estate which should be appropriated to the scheme of equalization, as outlined in his will; and we are therefore of the opinion that the distribution of the remainder of that portion of his estate which remained after his title to the slave property was extinguished by emancipation should be made upon the basis of non-accounting upon the part of those legatees to whom slave property had been actually delivered in accordance with the terms of the will. If, out of the estate of the testator, any of them have received property other than slave property, they should be held to account for the value thereof. The court therefore erred in directing that the devisees to whom advancements in slave property had been made should account respectively for the value thereof before participating in the *residuum*.

*Judgment reversed.*