## HART, administrator, *v.* BROWN.

1. In 1901 a testator executed his will. By the first item he devised certain land to his two grandchildren for life. By the second item he provided for a remainder over as to such land. By the third item he bequeathed to the two grandchildren the dividends on certain railroad stock, so long as it should remain in the hands of his executor. The fourth, fifth, and seventh items were as follows: "4. To my said grandchildren above named I give and bequeath the interest on the following amounts of cash money now on deposit, as follows: three (3000) thou-

sand dollars with I. C. Plant's Son, and two (2000) thousand at Exchange Bank, both at Macon, Ga., as shown by the deposit book issued to me by said banks; and my executor is hereby authorized and empowered to receipt fully said railroad company for all dividends due on said stock described in item 3 of this will, and to pay same to my said grandchildren. He, my executor, is also hereby authorized and empowered to receive from said banks the interest on the amounts of cash deposited as aforesaid with the Exchange Bank and with I. C. Plant's Son, and receipt them fully therefor, and to pay the interest so received to my said grandchildren. My executor is also authorized, in the event said banks should become unsafe or get in any financial embarrassment, or should they cease to pay interest at the rate of five 5%, to withdraw said amounts of cash from said banks above mentioned, to wit: I. C. Plant's Son and Exchange Bank, and to place the same in any other safe and reliable bank paying interest on deposits. 5. One year after my death, my said grandchildren shall have to be equally divided between them one thousand ($1000) dollars out of the bank of I. C. Plant's Son, and one thousand ($1000) every two (2) years thereafter, until the amounts mentioned in item 4 of this will are exhausted. In order to carry out the previous [provisions?] of this item, my executor is hereby authorized to draw said amounts in the manner above mentioned in this item, and to pay the same over to my said grandchildren. 7. In the event of the death of either of my said grandchildren without issue, the income and legacies mentioned in items (3) three, four (4) and five (5) of this will shall go to and become the income and legacies of the survivor—the one living. If both should die without issue, then to revert to and become a part of my estate." By the tenth item he left to his son all of his property not otherwise "conveyed by this will, both real and personal, including lands, money, and all other personal or real property of which I am seized and possessed." During the lifetime of the testator the two banks mentioned failed. At that time. he had on deposit in the bank of I. C. Plant's Son the sum of $3288.75, of which $3000 was on time deposit, the balance being interest and a general deposit. He had on deposit in the Exchange Bank at the time of its failure the sum of $5758.60, of which amount the sum of $5500 was on time deposit, the balance being interest and general deposits. Certain amounts were paid by the receivers of these banks during his lifetime. After the death of the testator, certain other amounts, less than the whole amounts of the deposits, were paid by the receivers. *Held*, that the pecuniary legacies to the grandchildren of the testator provided for in the fourth and fifth items of the will were specific legacies.

2. Regardless of the construction of the will as to whether such legacies were general or specific, there was no error in holding that the plaintiff showed no cause for injunction.

APRIL 15, 1916.

Equitable petition. Before Judge Gilbert. Taylor superior court. February 16, 1915.

J. T. Hart, as administrator de bonis non with the will annexed of F. Mathews, deceased, filed his petition against L. B. Brown, alleging in substance as follows: A certain house on land belonging to the estate of the testator is being torn down and removed by the defendant without legal right or authority. The defendant is insolvent and unable to answer to a judgment which might be obtained against him for damages. The removing of the house is also liable to cause a number of suits. The plaintiff is anxious to wind up the estate and be discharged. The damage from removing the house can hardly be estimated, under the peculiar circumstances of the case. The prayer was that the defendant be enjoined from trespassing on or in any way interfering with the property. The defendant answered that he could neither admit nor deny the allegation that the plaintiff was the administrator de bonis non with the will annexed of F. Mathews, but alleged that there was no necessity for appointing such an administrator, as the estate had been fully administered. He admitted that he was tearing down the house, but denied that it belonged to the estate of Mathews, and averred that he himself was seized of it in fee simple. He denied insolvency or the necessity for an injunction. He pleaded estoppel against the plaintiff, on the ground that he bought the land from the executor of the residuary legatee under the will of the testator, and that this was done with the knowledge and acquiescence of the plaintiff.

The will is sufficiently set out in the first headnote, except that item ten was as follows: "To my son, Otis F. Mathews, I hereby give and bequeath the remainder of my property—all of my property not otherwise conveyed by this will, both real and personal, including lands, money, and all other personal or real property of which I am seized and possessed." The case was submitted to the presiding judge without a jury, on an agreed statement of facts in substance as follows: The testator, F. Mathews, died on or about the 24th day of January, 1908, testate, and O. F. Mathews qualified as executor, took charge of the estate, and administered it until his death in July, 1913. Since his death the plaintiff has been appointed and has qualified as administrator de bonis non with the will annexed, and brings this suit as such. The estate of the testator has been fully administered under the will, except as to the income and legacies mentioned in items four and five. The

income mentioned in item four, to be derived from the railroad stock, is not involved in this case. Mrs. Hart, the surviving granddaughter of the two mentioned in the will, has received $4,000 of the legacies mentioned in items four and five. Prior to the death of the testator the I. C. Plant's Son bank failed, about 1904. At the time of the failure the testator had on deposit therein the sum of $3288.75, of which $3000 was on [time] deposit, the balance being interest and general deposit. Payments have been received from that bank or its receivers, aggregating $1230.53. (Four of these payments, aggregating $1156.54, were made during the lifetime of the testator, as appears from their dates.) Prior to the death of the testator the Exchange Bank also failed, in July, 1907. At the time of its failure the testator had on deposit in it the sum of $5758.60, of which $5500 was on time deposit, the balance being interest and general deposits. Certain amounts have been received from the receivers of that bank, aggregating $4894.81. (As appears from their dates, two of these payments, aggregating $2303.44, were made during the lifetime of the testator.) It was further agreed that the court should consider the will of the testator in its entirety, having special regard to whether the incomes and legacies mentioned in items four and five were specific or general. It was also agreed that the land in question formed a part of the estate of the testator at the time of his death, and descended to O. F. Mathews as residuary legatee under the will; and that the estate of the testator was worth $25,000 or more at the time of his death. The court revoked the restraining order which had previously been granted, and rendered judgment for costs in favor of the defendant. In connection with this order he filed a brief opinion, stating that a decision as to the character of the legacies did not seem to be essential in order to decide the case, as no valid reason appeared for granting the injunction as prayed. He stated, however, that, in his opinion, the legacies mentioned were special. The plaintiff excepted.

*C. W. Foy,* for plaintiff. *W. F. Weaver,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.) The Civil Code (1910), § 3902, declares as follows: "Legacies may be either general or specific. A specific legacy is one which operates on property particularly designated. A gift of money to be paid from a specified fund is nevertheless a general legacy." A pecuniary

legacy, with the addition of a demonstrative statement or direction as to the fund from which it is to be paid, will ordinarily be construed to be a general, rather than a specific, legacy; the legacy being considered to be of the sum named, and the demonstrative clause as pointing out the primary source of payment, but not the exclusive means, if such fund should not be sufficient. *Hutchinson* v. *Fuller*, 75 *Ga.* 88; *Thompson* v. *Stephens*, 138 *Ga.* 205, 208 (75 S. E. 136). And this accords with the code section above quoted. Nevertheless a testator may, if he sees fit, bequeath all of a particular fund, in a purse, or a bank, which is separate from other funds, and may employ such language as to show that he creates a specific legacy of that particular fund, rather than a legacy of a definite amount, to be paid from a specific fund. In *Tennille* v. *Phelps*, 49 *Ga.* 532, 541, it was said that undoubtedly he may so charge a money legacy upon a particular fund as to make the legacy follow the fate of the fund. *Ezell* v. *Head*, 99 *Ga.* 560 (27 S. E. 720); Smith's Appeal, 103 Pa. 559; Towle *v.* Swasey, 106 Mass. 100.

Were the legacies involved in the present case of certain sums of money, with a demonstrative clause or direction that such sums should be paid from a specified fund; or were they specific legacies of certain distinct funds themselves? The testator bequeathed to his two grandchildren the interest on "the following amounts of cash money now on deposit, as follows:" $3000 with the bank of I. C. Plant's Son, and $2000 in the Exchange Bank, both at Macon, Ga., "as shown by the deposit book issued to me by said banks." The agreed statement of facts does not show the amounts on deposit in the two banks at the time when the will was made. But, in the absence of any evidence to the contrary, the language of the testator indicates that he then had on deposit at interest $3000 in one of the named banks, and $2000 in the other. He refers to such amounts as "now on deposit," and undertakes to identify such deposits by the entries on his deposit books. It was the interest derived from these deposits, not on $5000 generally, which he bequeathed in the fourth item, and which he authorized his executors to receive, give receipts for, and pay over to his two grandchildren. Moreover, in certain contingencies, he authorized his executor to withdraw these particular deposits from the named banks, and to deposit them in another bank at interest. He was

providing in regard to these two deposits as special funds, segregated from other funds, and to be dealt with, as to preservation and the collection and payment of interest, apart from other funds which he might have at his death. By the fifth item he declared that, one year after his death, his two grandchildren should have, to be equally divided between them, out of the bank of* I. C. Plant's Son the sum of one thousand dollars, and thereafter every two years the sum of one thousand dollars, "until the amounts mentioned in item four of this will are exhausted." Here the first one thousand dollars was specifically to be had from the bank of I. C. Plant's Son. What amounts were to be exhausted by the payments thus provided for? Clearly the two deposits which had been identified and on which interest was to be collected and paid to the two legatees. When the will was made there were these two deposits drawing interest, which the testator undertook to describe separately from any other funds, to provide for their preservation, and for the collection and payment of the interest on them to his two grandchildren, and to have the corpus of such deposits withdrawn from the banks in installments and paid to the same legatees. The provisions so made are inconsistent with the idea that the testator intended to give to such legatees fixed sums of money, and merely to direct the fund from which such amounts should be paid.

The cases of bequests of stated sums, described as then invested in a certain way, or of a certain amount forming part of a deposit, or of notes to a certain amount for the purpose of purchasing a plantation (*Smith* v. *Smith, 23 Ga. 21*), are not controlling here.

The trial court properly held that the legacies involved in this case were specific. He also correctly declared that, whatever the ruling might be on the subject discussed, no ground for the grant of an injunction was shown.

*Judgment affirmed. All the Justices concur.*