SHOUP *et al. v.* WILLIAMS *et al.; et vice versa.*

1. In construing a will the intention of the testator is the controlling consideration, and his intention must be ascertained by taking the will, as it is said, "by the four corners," and giving to all parts of it consideration.

(a) In construing a particular item of a will, or a particular clause of an item, the court will view and consider the whole instrument.

(*b*) Section 3900 of the Civil Code, which provides that "In the construction of all legacies, the court will seek diligently for the intention of the testator, and give effect to the same as far as it may be consistent with the rules of law; and to this end the court may transpose sentences or clauses, and change connecting conjunctions, or even supply omitted words in cases where the clause as it stands is unintelligible or inoperative, and the proof of intention is clear and unquestionable; but if the clause as it stands may have effect, it shall be so construed, however well satisfied the court may be of a different testamentary intention," does not affect nor is it a limitation upon the application of the general rule stated in the preceding note.

(*c*) The last clause of the section, to wit, "but if the clause as it stands may have effect, it shall be so construed, however well satisfied the court may be of a different testamentary intention," is to be construed as a limitation upon the power of the court to transpose sentences, change connecting conjunctions, or supply omitted words, if the clause as it stands in relation to the whole instrument is intelligible and operative.

2. Applying the foregoing, the court not not err in construing the will in this case.

Nos. 861, 862.     February 13, 1919.

Petition for construction and direction.     Before Judge Bell. Fulton superior court.     January 31, 1918.

John C. Peck, on November 30, 1903, made his will as follows:

"Item 1st.  I direct that any property which I may own at the time of my death, except such as is specially disposed of hereafter, may be sold as soon as it can reasonably be done, and from the proceeds thereof, together with such funds as may be on hand, that my debts and expenses be paid; and if I have not already done so, I direct that my executors shall erect a suitable monument on my lot in Oakland Cemetery.  If the amount realized should not be sufficient to pay the expenses designated, the balance required may be taken from the rental of the trust property.  In case there is any money left after paying debts, funeral expenses and monument, as mentioned above, I direct that the same be divided into five equal parts and paid out as follows:  One share to my beloved wife, Frances Josephine Peck; one share to my son, Frank H. Peck; one share to my grandchildren, J. C. Peck Jr., and Arthur J. Peck, sons of my deceased son Arthur J. Peck; one share to my daughter Cora P. Williams, and one share to my daughter Lillie P. Davis.

"Item 2nd.   I give and bequeath unto my beloved wife, Frances Josephine Peck, the full and free use of the house and lot in which I now reside, and known as No. 97 Ivy street, all taxes, insurance,

and ordinary repairs on same to be paid by my executors out of the income from the other property. This use to continue during the full term of her natural life. I also give her absolutely, all the household goods and fixtures in said house, and any horses and carriages which I may own at the time of my death, all to·be hers, without restraint or control.

"Item 3d. The property known as No. 15 and 17 North Pryor street, also property at the junction of Peachtree and Pryor streets, also the house and lot No. 97 and 99 Ivy street I place in the hands of my executors as a trust estate (the house and lot No. 97 Ivy street being subject to the life use of my wife, as indicated in Item 2d) ; and the said executors shall keep the buildings on said lots insured for about three fourths of their value, and keep same in good repair. The rental from the above trust estate shall first be applied to the payment of taxes, insurance, and repairs, and the sum of one hundred fifty dollars per month shall be paid to my wife named above, for her use as she may deem proper. Payment to be made to her monthly and to continue during the full term of her natural life. As I think this would make her life easy and without care of looking after property, I have given her this in place of dower and year's support. After paying as above, the income from the property shall be applied to the payment of the monument mentioned above, or, if not needed, shall be paid over to my heirs as hereinafter provided. To insure the payment of taxes, insurance, and repairs, as specified above, I direct that my executors shall set aside from the rental of the property, and deposit in some good safe bank, the sum of one hundred fifty dollars per month for each and every month, and on the first of January of each year any surplus of this amount left after paying the taxes, insurance and repairs, shall be divided between my heirs as is provided for the balance of income from property. This trust estate I desire to be continued until the youngest grandchild is twenty-one years old.

"Item 4th. The entire balance of the income from the trust estate (after paying fixed charges as above) I desire to be divided into four equal parts, between my children and grandchildren, viz.: Frank H. Peck, one share; John C. Peck and Arthur J. Peck, sons of my deceased son, Arthur J. Peck, one share; to Cora P. Williams, one share; to Lillie P. Davis, one share. This division

may be made monthly or quarterly as may be or may seem best to my executors. Should either of my children be dead, then their children should receive the parent's share, that is, the one share going to that parent shall be equally divided between the children of that parent. At the expiration of the trust, all the property may be divided in kind or may be sold, and the proceeds divided between my children and grandchildren, two' shares to each child and one to each grandchild. If the grandchild is dead, leaving children, such child or children shall inherit the parent's share.

"Item 5th. In case of the death of either John C. Peck Jr. or Arthur J. Peck, during the trust, then that portion of the income shall go to the one living; and in case of the death of both of said children before the end of the trust, then the entire share shall revert to the general fund, unless they may have been married, ir which case, if there are living children, they shall inherit th father's share; but if no children are living, the amount shalt revert as above. The same condition shall apply to any children of my daughters, Cora P. Williams and Lillie P. Davis; that is, in case of the death of the parent, the portion of the property ready for distribution, as well as the portion of the income, should go to such child or children; but in case of the death of such child or children before the final distribution, without leaving living children or grandchildren, then the full share shall revert to the general fund, and be divided between other children; it being my intent and desire that my property shall go to my wife and our children and through them in case of their death to their children according to the terms of this will."

By item 6th executors were appointed.

Upon the death of the testator, which occurred on March 5, 1908, he left surviving him the following persons: His wife, Frances Josephine Peck; one son, Frank H. Peck; two daughters, Cora Peck Williams and Lillie Peck Davis; and eight grandchildren, to wit, Pearl Peck Shoup (formerly Pearl B. Peck), Emerson P. Peck, William Hoyt Peck, George Starr Peck, Eloise Peck Cook (formerly Reba Eloise Peck), children of Frank H. Peck; J. C. Peck and Arthur J. Peck, sons of Arthur J. Peck, a deceased son of the testator; and Josephine Davis Mell (formerly Josephine Davis), daughter of Lillie Peck Davis. All of the above-named persons were in life at the time of the execution of the will.

Eloise Peck Cook, the youngest of all the grandchildren of the testator, became of age on February 9, 1917. Frances Josephine Peck, the widow of the testator, died on March 6, 1917. On April 5, 1917, Frank H. Peck and Walter R. Brown, executors of the estate of John C. Peck, filed their petition to the superior court of Fulton county, in which they prayed that the court construe the will and direct them in the following particulars: (1) "Is each child of testator now entitled to two shares and each grandchild of testator now entitled to one share in said estate absolutely and in fee simple?" (2) "Or, is each child of testator now entitled to two shares, and the two grandchildren of testator, J. C. Peck and Arthur J. Peck, now entitled to one share in said estate, to the exclusion of the other grandchildren of testator, absolutely and in fee simple?" (3) "Do any of the distributees take a life interest contingent upon their leaving children; and if so, whom?"

At the time of the filing of the bill for direction all the above-named children and grandchildren of the testator were in life. (no other grandchild having been born since the execution of the will), and were made parties defendant. All the defendants answered, except Josephine Davis Mell, the daughter of Lillie P. Davis, and except Frank H. Peck, who, being in his representative capacity one of the plaintiffs, did not further plead. The five children of Frank H. Peck contended, in substance, that the proper interpretation of the will was that when the so-called trust estate terminated the corpus thereof was to be divided into fourteen shares: two shares to go to each of the three living children of the testator, namely, Frank H. Peck, Cora P. Williams, and Lillie P. Davis, and one share to each of the grandchildren of the testator, namely, the five children of Frank H. Peck, the two children of the deceased son, Arthur J. Peck, and the one child of Lillie P. Davis. Cora P. Williams and Lillie P. Davis, daughters of the testator, and John C. Peck and Arthur J. Peck, the sons of a deceased son of the testator, in their answers contended, in substance, that the property of the testator not included in the so-called trust estate was disposed of under item one of the will, and passed partly by the provisions of the will and partly by inheritance from the deceased widow of the testator to the three living children of the testator and two children of testator's deceased son, in the

proportion of one fourth to each living child and one fourth to the sons of the deceased child, and that as to the corpus of the so-called trust estate the will disposed of it so that it would also be received in equal shares by the living children of the testator and the two sons of the dead son representing their deceased father. The court, to whom the case was submitted without the intervention of a jury, construed the will as follows:

"First. That the property not included in the trust estate, and disposed of in item 1st, went in fee simple, one fifth to the widow, one fifth to each of the children of the testator, and one fifth to the two children of Arthur J. Peck, as set forth in item one; that the widow having died intestate, her share follows the law of inheritance, going in equal shares to the same persons, so that Frank H. Peck is entitled to one fourth of said funds or property, Cora P. Williams to one fourth, Lillie P. Davis to one fourth, and J. C. Peck Jr. and Arthur J. Peck together to one fourth.

"Second. That each child of the testator is now entitled to two shares of the trust estate, and the two grandchildren of the testator, J. C. Peck and Arthur J. Peck, are each entitled to one share in said estate, to the exclusion of the other grandchildren of the testator, absolutely and in fee simple.

"Third. That neither of the distributees take a life interest contingent upon their leaving children."

To the judgment construing the will as indicated in the second and third divisions, set forth above, the five grandchildren of the testator (children of Frank H. Peck, son of the testator) excepted. At the hearing the two daughters of the testator and the two sons of the deceased son of the testator moved to strike so much of the answers filed by the plaintiffs in error in the main bill of exceptions as sought to set up an old will of the testator and certain accompanying documents, on the ground that there was no such ambiguity in the will as authorized the introduction of extrinsic evidence. This motion was overruled, and during the progress of the trial the documents were received in evidence over the objection of the defendants in error in the main bill; and these rulings are assigned as error in the cross-bill of exceptions.

*G. S. Peck* and *Rosser, Slaton, Phillips & Hopkins,* for plaintiffs in error. *Anderson, Rountree & Crenshaw* and *Brewster, Howell & Heyman,* contra.

GEORGE, J. (After stating the foregoing facts.)

1. In the able brief of counsel for the plaintiffs in error various arguments are used, and sundry rules of law are applied to uphold the construction given by them to the will of John C. Peck, but they mainly rely upon the following provision of item four of the will: "At the expiration of the trust, all the property may be divided in kind or may be sold, and the proceeds divided between my children and grandchildren, two shares to each child and one to each grandchild. If the grandchild is dead, leaving children, such child or children shall inherit the parent's share." It is insisted that the language of this provision, which manifestly refers to the corpus of the estate, is plain and unambiguous; that the words, "my children," "grandchildren," "each child," and "each grandchild." in the particular clause involved, should have their usual and ordinary meaning. In this connection we are referred to section 3900 of the Civil Code, which is as follows: "In the construction of all legacies, the court will seek diligently for the intention of the testator, and give effect to the same as far as it may be consistent with the rules of law; and to this end the court may transpose sentences or clauses, and change connecting conjunctions, or even supply omitted words in cases where the clause as it stands is unintelligible or inoperative, and the proof of intention is clear and unquestionable; but if the clause as it stands may have effect, it shall be so construed, however well satisfied the court may be of a different testamentary intention." And it is said that the last clause of this section, to wit, "if the clause as it stands may have effect, it shall be so construed, however well satisfied the court may be of a different testamentary intention," is controlling in this case. If the provision of the will above quoted stood alone, that is, if nothing went before it or followed after it, it may be conceded that the will should be given the construction placed upon it by plaintiffs in error. But the rule laid down in the section quoted in no wise limits the well-recognized doctrine that the intention of the testator is the controlling consideration, and that this intention must be gathered from the whole will. *Choice* v. *Marshall,* 1 *Ga.* 97, 102; *Winn* v. *Tabernacle Infirmary,* 135 *Ga.* 380, 383 (69 S. E. 557, 32 L. R. A. (N. S.) 512); *Tyler* v. *Theilig,* 124 *Ga.* 204 (52 S. E. 606). The instrument must be taken, as it is sometimes said, by the "four corners," and every part of it given effect so far as sound public policy and the

rules of law will permit. In the recent case of Rutland v. Emanuel, 80 So. 107(5), the Supreme Court of Alabama ruled: "In construing a particular item of a will, the court will view and consider the whole instrument." This ruling is in harmony with the well-recognized rule that the intention of the testator, as gathered from the whole will, is the controlling consideration. *Miller* v. *Hurt*, 12 *Ga.* 357, 361; *Gaboury* v. *McGovern*, 74 *Ga.* 133, 140; *Ezell* v. *Head*, 99 *Ga.* 566 (27 S. E. 720). In *Randolph* v. *Bond*, 12 *Ga.* 362, 367, this court, speaking through Judge Warner, said: "The counsel for the defendants in error insists, that they are to take per capita, share and share alike; and such certainly would be the legal effect of the latter part of the 7th clause of the will, but for the other expressions contained in it denoting a different intention. While we admit the general rule as contended for by the defendants in error, in the absence of any contrary intention, yet the legatees will take per stirpes if the testator's intention to that effect appears from other expressions in the will;" citing Roland v. Gorsuch, 2 Cox, 187. It is proper to say that counsel for plaintiffs in error contended that the clause of the will quoted can be given literal effect without doing violence to any other part of the will, and that the will, taken as a whole, clearly reveals the intention of the testator to divide his estate into fourteen shares, two shares to each of his children and one share to each of his grandchildren. The provision in the latter part of the third item of the will, "This trust estate I desire to be continued until the youngest grandchild is twenty-one years old," and other provisions of the will, are pointed out as sustaining this view. It is, under the facts of this case, immaterial whether the "trust estate" was to terminate absolutely when the youngest grandchild became twenty-one years of age, without regard to whether the wife of the testator was then in life. If the sentence last above quoted refers to the youngest of all the grandchildren of the testator, it is material only as bearing upon the general intent of the testator in the making of his will. Of course if the "trust estate" is to be continued until the youngest of all his grandchildren "is twenty-one years old," the presumption would arise that he intended the youngest grandchild to take under the will; but this is not necessarily true. Looking to the whole will, however, we think it clear that as to the property which was included in the so-called trust estate, the testator intended that it should also be received in equal shares by the three

living children of the testator and the two sons of the dead son, representing their deceased father. In the first item of the will the testator refers to his grandchildren by name, and includes only the sons of his deceased son, Arthur J. Peck; and this reference is to his grandchildren in connection with his wife and his three living children. In item four of the will, in making a bequest of the remainder of the income from the "trust estate" he provides that it be "divided into four equal parts, between my children and grandchildren, viz.: Frank H. Peck, one share; John C. Peck and Arthur J. Peck, sons of my deceased son, Arthur J. Peck, one share; to Cora P. Williams, one share; to Lillie P. Davis, one share." It is in item four of the will, and almost immediately following the bequest above quoted, that the clause mainly relied upon by plaintiffs in error appears. At the end of item five, after the testator has finally disposed of his entire estate, income and corpus, we find this significant statement: "it being my intent and desire that my property shall go to my wife and our children and through them in case of their death to their children according to the terms of this will." Upon these and other considerations arising from a careful scrutiny of the whole will, we are satisfied that the testator referred to his two grandchildren, the sons of his deceased son, as coming within the descriptive words employed by him when he devised the corpus of the "trust estate" to "my children and grandchildren, two shares to each child and one to each grandchild."

2. None of the distributees, under a proper construction of the will, took a life interest contingent upon their leaving children. The will created a vested remainder in the corpus of the "trust estate" in Cora P. Williams and Lillie P. Davis, subject to be divested if they did not survive the termination of the "trust estate." *Speer* v. *Roach,* 145 *Ga.* 852, 854 (90 S. E. 57).

As indicated, we are of the opinion that there was no ambiguity apparent upon the face of the will. While the court admitted certain aliunde evidence consisting of an old will with certain pencil memoranda said to have been made thereon by the testator, and other documentary evidence, the conclusion finally reached by the court was correct. No other construction would give effect to the wording of the will, considered in its entirety.

*Judgment on the main bill of exceptions affirmed. Cross-bill dismissed. All the Justices concur.*