OWENS *et al.* v. CITIZENS & SOUTHERN NATIONAL BANK, executor, *et al.*

WARDENS ETC. OF ST. JOHN'S CHURCH *v.* OWENS *et al.*

290

Nos. 9257, 9291.   July 11, 1933.

*Lawton & Cunningham,* for Owens et al. *George T. Cann, Thomas P. Ravenel,* and *Raiford Falligant,* for Wardens, etc.

*Samuel B. Adams, N. K. Clark, George C. Heyward Jr., F. S. Mackall,* and *Stephens & Stephens,* contra.

HILL, J. (After stating the foregoing facts.) In construing this will it is necessary to determine whether the legacies bequeathed by testator are general, specific, or demonstrative legacies. Our Civil Code (1910), § 3902, provides: "Legacies may be either general or specific. A specific legacy is one which operates on property particularly designated. A gift of money to be paid from a specified fund is nevertheless a general legacy." In Redfearn on Wills and Administration of Estates, 266, it is said: "A demonstrative legacy is one which designates the fund or property from which it is to be satisfied but is nevertheless an unconditional gift to

the legatee of the amount or value specified. That it names a particular fund or other property from which it is to be satisfied is considered to be demonstrative of a convenient mode of payment; if that mode fails, the legacy is to be satisfied out of the general assets of the estate. A demonstrative legacy differs from a general legacy in that it does not, in the first instance, abate upon insufficiency of assets to pay the debts of the estate and the expenses of administration; it differs from a specific legacy in that there is recourse for its payment from the general assets of the estate in the event of ademption in part or in whole." See cases cited in note 41. A demonstrative legacy has been defined in 3 Pom. Eq. Jur. (3d ed.) § 1133, as follows: "Demonstrative legacies are a peculiar kind which partake of the nature of both specific and general legacies, and combine the advantages of each. Demonstrative legacies are bequests of sums of money, or of quantity or amounts having a pecuniary value and measure, not in themselves specific, but made payable primarily out of a particular designated fund or piece of property belonging, or assumed to belong, to the testator. Their effect is peculiar. Although made primarily payable out of a particular fund, these legacies do not fail—are not adeemed—because such fund may not exist as a part of the testator's estate at his death, but they are then payable out of his general assets, like general legacies. On the other hand, if such particular fund is in existence as a part of the testator's estate at his death, they are not liable to abatement in common with general legacies, but are entitled to payment under the circumstances in exactly the same manner as true specific legacies." And in 3 Woerner (3d ed.), 1513, § 445: "There is a third class of legacies, known by the name given them in the civil law as demonstrative legacies, differing from general and partaking of the nature of specific legacies in that they are not liable to abate with general legacies upon a deficiency of assets, and on the other hand differing from specific and partaking of the quality of general legacies in so far as, if the fund fail, the legatee will be entitled to receive the legacy out of the general assets. A demonstrative legacy is a pecuniary legacy, or legacy of quantity, the particular fund or personal property being pointed out from which it is to be taken or paid." In 40 Cyc. 1870, 1871, a demonstrative legacy is thus defined: "A demonstrative legacy is one of quantity, payable out of a particular fund primarily and

out of the general estate if the fund designated proves insufficient. Two elements are necessary to constitute a demonstrative legacy; it must appear in the first place that the testator intended to make an unconditional gift in the nature of a general legacy, and secondly, the bequest must indicate the fund out of which it is payable. Such a legacy is in its nature both general and specific; general, in that if the fund be called in or fail, the legatee will not be deprived of his legacy, but be permitted to receive it out of the general assets; yet specific, in that it will not be liable to abate with the general legacies in case of a deficiency of assets." "A demonstrative legacy is a gift of money or other tangible goods charged on a particular fund in such a way as not to amount to a gift of the corpus of the fund or to evince an intent to relieve the general estate from liability in case the fund fails." 18 Am. & Eng. Enc. Law (2d ed.), 721. "A legacy is demonstrative where money is given 'out of' a specified fund, as in the case of a bequest of a certain sum out of a particular debt due the testator or out of designated stocks or other securities or payable out of or charged on land or any other specified part of the testator's estate." 18 Am. & Eng. Enc. Law (2d ed.), 722.

It is insisted that item 7 of the will creates a specific or demonstrative legacy; that, whether it is a specific, demonstrative, or general legacy, at last the *intention of the testator* as gathered from the four corners of the will itself is the law of this will; that the will clearly expressed the intention of the testator that securities of the value of $42,000 should be held by testator's executors to pay the income therefrom to Agnes Heyward, the sister-in-law of testator, during her life, and upon her death such securities are to be delivered to St. John's Church; and that it was the testator's intention that this sum should go as directed in his will, without abatement, whether the estate should be sufficient to pay all the legacies in full or not, and that this sum was not intended by the testator to abate except in the one contingency, and for the one purpose expressed by the testator in item 10, viz., that "if at the time of my death there is a deficiency of funds" to pay Nephew K. Clark $30,000 after paying the $42,000 in securities to pay the income to Agnes Heyward for her life, then such deficiency should be a charge against the $42,000 of securities, but payable only after the death of Agnes Heyward. On the trial of the case the evidence

showed that there was more than a sufficiency of the estate of testator to pay the $42,000 in securities, and to pay Nephew K. Clark the $30,000 bequeathed to him. We think it was clearly the intention of the testator that neither the legacy to Agnes Heyward for life, nor the legacy to Clark, should abate.

The court also held that the "entire legacy of $30,000 to Nephew K. Clark should not abate pro rata at the expiration of the year from testator's death. Any deficit resulting shall be made up *after the death of Miss Heyward* from the trust fund. While there should be no pro rata abatement of the entire legacy of $30,000 to Clark, there should be an abatement pro rata on the legacy of $15,000 given to him in item 6, and any deficit should be made up on the death of Miss Heyward from the trust fund set forth in item 7, so as to make the total of $30,000 as provided in item 10 of said will." We are of the opinion that the court below did not err in this decision.

St. John's Church filed its cross-bill of exceptions upon the ground that the court should have held that the entire $30,000 legacy to Clark should be paid in full without abatement, and should not have held that any part of the $30,000 should abate or pro rate; that the court should not have held that the entire legacy of $30,000 should not abate pro rata at the expiration of the year from testator's death, and that any deficit resulting should be made up after the death of Miss Heyward from the trust fund, but that there should be an abatement pro rata upon the legacy of $15,000 given to Clark in item 6 of the will. The evidence showed that the testator's estate at his death amounted to $117,997.61, and that there were specific legacies amounting to $15,507 consisting of shares of stock, a house, articles of furniture, jewelry, silverware, etc. Deducting these specific legacies left for distribution $102,240.61; and after the payment of debts due by the estate, funeral expenses, and expenses of distribution, and the amount set aside for the care of a cemetery lot, there would be left of the $102,240.61 approximately $90,000 for distribution, more than enough to hold the $42,000 in securities and to pay Nephew K. Clark the $30,000 provided in items 7 and 10. We are of the opinion that the court below construed the will correctly, and that it was the testator's intention, as gathered from the will itself, that Agnes Heyward, his sister-in-law, a devoted relative (as to whether a sister-in-law is a relative, see Mar-

cus *v.* Leake, 94 N. W. 100, 101) for twenty-five years, should have a *demonstrative legacy* in the securities left by his estate, and that this bequest should be a preferred legacy over all others, without abatement. And the will clearly indicates the intention of the testator to prefer his sister-in-law to the other legatees named in his will. He described her as his sister-in-law, one who had devoted twelve years of her life to the care of testator's afflicted and only son. The evidence showed that testator's only child was very delicate, suffering from diabetes contracted soon after his infancy and lasting to the time of his death, which occurred while he was twelve years of age. This sister-in-law devoted twelve years of her life to the care of this afflicted son, who was only sixteen days old when his mother died, and Miss Heyward was the only mother the child ever knew, and after the child's death the sister-in-law remained, at testator's request, in his home, taking charge of his household for twenty-five years and until testator died. The testimony also reveals that testator told Miss Heyward on several occasions that he would provide for her for life; and it would, under such circumstances, be strange indeed if he had not done so. The testimony further shows that Miss Heyward is not now in a physical condition to earn a livelihood. The testator knew the financial condition of his sister-in-law. During all the time that it was necessary to nurse testator's invalid son there was no nurse employed except one, and that was about twelve hours before the son died. Having been a trained nurse at the time that she came into testator's home, Miss Heyward well knew how to nurse and care for the afflicted son and the testator in his declining years. All these things the testator knew and recognized when he said, in his will: "that $42,000 in securities be held in order to give an income to Agnes Heyward (my sister-in-law), who devoted twelve years of her life to the care of my deceased son, William W. Williamson Jr." So we feel that the learned trial judge correctly interpreted the intention of the testator when he gave a preference to Miss Heyward over other legatees named in the will. Neither was there error in the other rulings of the court in construing the will. See Bost *v.* Morris, 202 N. C. 34 (161 S. E. 710), which is very similar in its facts to the instant case.

The court did not err in holding that the market value of the securities bequeathed to Miss Heyward should be as of the date of

testator's death. Civil Code (1910), § 3903; *Holliday* v. *Price,* 146 *Ga.* 782 (92 S. E. 533).

*Judgment affirmed on both main and cross bills of exceptions. All the Justices concur.*