No. 9877. JULY 13, 1934.

*Gazan, Walsh & Bernstein,* for plaintiff.
*Adams, Adams & Douglas,* for defendant.

.

BAILES, executor, *v.* HALSEY.

No. 9980. JULY 13, 1934.

*W. O. Wilson,* for plaintiff.
*Tye, Thomson & Tye,* for defendant.

BELL, J. W. H. Bailes, as executor of the estate, filed a petition for construction of the will of W. H. Halsey. The items of the will to be construed were as follows: "2. To my niece, Jessie Humes Laughlin, of Huntsville, Madison County, Alabama, I do hereby give and bequeath one United States Treasury Savings Certificate of the face value of five hundred dollars.

"3. To my niece, Nell Andra Bailes, of Atlanta, Fulton County, Georgia, I do hereby give and bequeath one United States Treasury Savings Certificate of the face value of five hundred dollars.

"4. To my brother, George L. Halsey, of Huntsville, Madison County, Alabama, I do hereby give and bequeath all of the re-

mainder of my property, real and personal, of which I may die possessed, to have and to hold absolutely and in fee simple."

The questions which the executor sought to have determined were: (1) whether the bequests referred to in items 2 and 3 were specific legacies; (2) whether, in view of the facts stated in the petition, there was an ademption of said legacies; (3) whether there was a substitution of security for that referred to in these items. George L. Halsey, the legatee named in item 4, filed an answer in which he contended that the legacies to the nieces were not general legacies, but were specific legacies and as such had been adeemed; and denied that there had been any substitution of other property or security for the United States Treasury Savings Certificates bequeathed to the nieces of the testator. He alleged that before the death of the testator all treasury certificates of the class referred to in items 2 and 3 had matured and had been redeemed, and that at the time of the death of the testator and ever since that event "it was and is impossible for the executor to obtain or deliver" to the nieces any such treasury certificates. "Wherefore" he contended that "said legacies are void, and said parties have no interest under the will."

The case was tried upon an agreed statement of facts of which the following only are deemed material here. The will was dated May 5, 1923. The testator died on July 13, 1932. When the will was executed the testator owned twenty United States Treasury Savings Certificates of the face value of one hundred dollars each, and one United States Treasury Savings Certificate of the face value of one thousand dollars, making a total of three thousand dollars in United States Treasury Savings Certificates. These certificates were redeemed by the treasurer of the United States on dates as follows: on or about June 22, 1927, five certificates of one hundred dollars each; on or about August 4, 1927, five certificates of one hundred dollars each; on or about October 17, 1927, five certificates of one hundred dollars each; on or about January 10, 1928, one certificate of one thousand dollars; on or about September 13, 1928, five certificates of one hundred dollars each. The agreed statement further showed that shortly after the redemption of the savings certificates the testator deposited corresponding amounts of money in the Fulton National Bank, and that he later checked upon this deposit for the purpose of purchasing described

bonds of various kinds. He also used other funds for the purchase of bonds at or about the same time. The sale of United States Treasury Savings Certificates was discontinued by the government on July 15, 1924. All of such certificates that were issued were to mature in five years from their respective dates.

The judge rendered a decree to the following effect: (1) The legacies to the nieces were specific legacies. (2) There was an ademption of such legacies, in that the certificates bequeathed are not in existence; and the testator having parted with his certificates during his lifetime, there is now an impossibility of performance by the executor of the specific legacies. (3) There was not a substitution of one character of security for the other. To this judgment the executor excepted.

We can not agree that the legacies referred to in items 2 and 3 of the will were specific legacies. We are of the opinion that they were general legacies, and as such were not subject to ademption or substitution. "Legacies may be either general or specific. A specific legacy is one which operates on property particularly designated. A gift of money to be paid from a specified fund is nevertheless a general legacy." Civil Code (1910), § 3902. The Code does not otherwise define a general legacy, but decisions defining the several classes of legacies and applying the law to them are almost without number. Legacies are usually divided into three classes: (1) general or pecuniary; (2) specific; (3) demonstrative. Jarman on Wills (6th ed.), 1063, contains the following statement: "A general legacy is a gift of something to be furnished out of the testator's general personal estate; it need not form part of the testator's property at the time of his death. Thus, if I bequeath to A 'the sum of 100 lbs.' or '100 lbs. 2 1/2 per cent. Consols,' or 'a gold watch,' these are general legacies. A specific legacy is a gift of a particular part of the testator's personal property belonging to him at his death. Usually the subject-matter of a specific legacy belongs to the testator at the date of the will, as where he gives to A 'my gold watch' or 'the Consols now standing in my name.' A demonstrative legacy is a legacy which is in its nature general, but which is directed to be satisfied out of a specified fund or part of the testator's property: thus, 'I give A 100 lbs. out of the consols now standing in my name' is demonstrative." This statement accords with the decided cases.

In Re Snyder, 217 Pa. 71 (66 Atl. 157, 11 L. R. A. (N. S.) 49, 118 Am. St. R. 900), the Supreme Court of Pennsylvania had for construction a will which bequeathed "$600 of bank stock" of a named bank, and held as follows: "A bequest of a certain number of shares of stock of a kind of which testator owns a large number is a general legacy, and not adeemed by a substitution, during testator's lifetime, of other stock for that owned at the execution of the will." In the opinion several cases were cited to support this conclusion, after which it was said: "Authorities need not be multiplied to sustain the correctness of the view of the court as to the character of these legacies. The testatrix did not intend to give money; for, if she had so intended, she would have simply made pecuniary bequests to the legatees. What she intended to give them was a certain amount of bank stock, measured by its par value, and what they are entitled to get from her estate is the market value of the same." See also Re Wilson, 260 Pa. 407 (103 Atl. 880, 6 A. L. R. 1349); Maxim v. Maxim, 129 Me. 349 (152 Atl. 268, 73 A. L. R. 1244); Kenaday v. Sinnott, 179 U. S. 606 (21 Sup. Ct. 233, 45 L. ed. 339); 28 R. C. L. 289-291, §§ 263-264. Special and demonstrative legacies are discussed in *Owens* v. *Citizens & Southern National Bank,* 177 *Ga.* 289 (170 S. E. 196). As to general and specific legacies, see *Greene* v. *Foster,* 178 *Ga.* 319 (173 S. E. 91).

The courts are inclined to construe a legacy to be general and not specific, to the end that an ademption may not result. As was said in Tifft v. Porter, 8 N. Y. 516, "The presumption is stronger that a testator intends some benefit to a legatee, than that he intends a benefit only upon the collateral condition that he shall remain, till death, owner of the property bequeathed." See also *Morton* v. *Murrell,* 68 *Ga.* 141. In Jarman on Wills, from which we have quoted, it is further said (p. 1069): "Although it is usual to classify legacies into the three classes of general, specific, and demonstrative, it must be remembered that a demonstrative legacy is from most points of view a general legacy, and that the more logical classification is to divide legacies into specific and general, and then to subdivide general legacies into the two subclasses of demonstrative and non-demonstrative." Ademption does not apply either to general or demonstrative legacies. Kenaday v. Sinnott, supra; Kramer v. Kramer, 201 Fed. 248.

In the instant case the testator gave to each of his nieces "one United States Treasury Savings Certificate of the face value of $500." At the time of his death he did not own any certificate of like character having a face value of $500; nor had he ever owned certificates of this denomination. On the date of the will he owned twenty certificates of the face value of $100 each, and one certificate of the face value of $1000. All of these were redeemed by the government before the testator's death, and he apparently used the proceeds in the purchase of other securities. Whether or not the bequests should be classed as demonstrative, we are clear that they were general and not specific. Accordingly, the legacies were not adeemed or lost by reason of the fact that the testator did not die possessed of any certificates of the character described. Counsel for the defendant in error contend that since the sale of United States Treasury Savings Certificates was discontinued on July 15, 1924, it is impossible to give effect to these legacies, and that the benefits that otherwise might have accrued to the legatees under items 2 and 3 must necessarily pass to the defendant in error as residuary legatee. It is pointed out that United States Savings Certificates were never transferable and could be purchased only from the government; and it is insisted that in view of the peculiar nature of these certificates, a bequest thereof must be treated as a special legacy, or else it will be void. Cf. U. S. *v.* Sacks, 257 U. S. 37 (42 Sup. Ct. 38, 66 L. ed. 118); U. S. *v.* Janowitz, 257 U. S. 42 (42 Sup. Ct. 40, 66 L. ed. 120).

The principal rule for the construction of a will is to ascertain the intention of the testator, and the courts will give effect to such intention so far as it may be consistent with rules of law. Civil Code (1910), § 3900. The will is to be construed by the law as it existed at the death of the testator, and his intention will yield to the law only when it clearly and decidedly conflicts therewith. *Sumpter* v. *Carter,* 115 *Ga.* 893 (42 S. E. 324, 60 L. R. A. 274). The testator must have known at and before his death that his executor could not buy United States Treasury Savings Certificates with which to execute these legacies. He must also have known that the language in items 2 and 3 was such as to create general legacies payable out of the general assets of his estate, and not depending for their validity upon the ability of his executor to purchase and deliver any particular thing to the legatees. If the con-

tention of counsel for the defendant in error is correct, the testator must have *intended* that his nieces would get nothing; whereas it is clearly apparent that he intended to confer a benefit upon them. He had employed a phraseology which was sufficient to grant a general legacy to each of them, and was not to be disturbed by any question of whether the legacies could be actually paid in treasury savings certificates, notwithstanding such certificates could no longer be obtained. He presumably knew that these bequests could be satisfied from his general estate, and there was no occasion to change the will for the purpose of meeting such contingency. His intention, as previously expressed, continued of force, and should now be given effect by paying to the legatees the market value of the certificates, if ascertainable. Since all treasury certificates owned by the testator at the time he made the will had been redeemed at their face value before his death, the legatees referred to in items 2 and 3 are now entitled to be paid from the general assets what would be the equivalent of redeemed certificates of the character evidently intended by the testator, namely, $500 to each legatee. This would represent the clear intention of the testator as expressed in those items, and would be a sufficient determination of market value under the facts of the present case. *Thompson* v. *Stephens,* 138 *Ga.* 205 (75 S. E. 136) ; MacDonald *v.* Irvine, 8 Ch. D. 101; Re Gray, 36 Ch. D. 205.

Counsel for the defendant in error would liken the present case to that of *Ezell* v. *Head,* 99 *Ga.* 560 (27 S. E. 720), where it was held that a provision in favor of minor children, for legacies to be charged against slave property only, became wholly unenforceable as a result of emancipation. The cases are not at all similar. The legacies involved in that case were to be paid in a particular class of property which before its delivery was absolutely destroyed by operation of law. The value of the treasury certificates referred to in the will here under consideration was not destroyed or annihilated as in case of the negro as a chattel, but the government simply discontinued the issuance and sale of such certificates. The present case is more like the case of Harper *v.* Bibb, 47 Ala. 547, in which it appeared that the testator by his will made a gift of money to be paid out of Confederate States bonds, or other notes which he held. None of these funds existed at the testator's death, and the question arose as to whether the legatees should be satis-

fied out of the general assets of the estate. It was held that the legacies were general, and that they were not defeated by a failure of the designated funds. That decision substantially covers every question involved in the case at bar.

The court erred in holding that the legacies to the nieces were specific and not general, and that an ademption had resulted. In· this view, no question of substitution is involved.

*Judgment reversed. All the Justices concur, except Russell, C. J., absent because of illness.*