SPROULL *et al. v.* GRAVES *et al.*

No. 14112.  MAY 27, 1942.

*Maddox & Griffin,* for plaintiffs in error.

*Barry Wright, Henry J. Fullbright Jr.,* and *Matthews, Owens & Maddox,* contra.

REID, Chief Justice.  1.  The executor of the will of Katharine C. S. O'Reilly prayed for its construction, and for direction with reference to payment of certain legacies.  The will was executed in July, 1937, and the testatrix died in July, 1938.  By item two of the will certain household furnishings were bequeathed to Mrs. Rebecca S. Graves, the sister of the testatrix, "to be hers for and during her natural life, or so long as she desires to maintain her own home or living quarters; and upon her death, or when she does not desire to continue to maintain her own home or living quarters," the same should be distributed "according to suggestions I have made to her."  Item three provided that there should be paid to the same sister from the income on certain specified real estate the sum of fifty dollars per month during her life, and upon the death of the sister that this sum should be paid in equal parts to two named nieces, the daughters of testatrix's brother.  Item four, which forms a vital part of the present inquiry, was as follows: "I hereby give, devise, and bequeath to my brother, Drayton Sproull,

the sum of fifty dollars ($50.00) per month for and during his natural life, to be paid to him from the annual income from the property in Reading, Pennsylvania, more clearly identified as the Heizmann Building at the corner of Sixth Street and Penn Street in said City of Reading; and upon the death of my said brother, Drayton Sproull, said income of fifty dollars ($50.00) per month shall be paid to my sister, Rebecca S. Graves, for and during her natural life, or until she shall discontinue her own home or living quarters; and upon the death of my sister, said Mrs. Rebecca S. Graves, or when she does not continue to maintain her own home, or keep house, said income of fifty dollars ($50.00) per month shall be paid as follows: (A) Twenty-five dollars ($25.00) per month to my niece, Martha Ann Sproull, for and during her natural life, and twenty-five dollars ($25.00) per month to my niece, Drayton Sproull, for and during her natural life." Item five made a special bequest (not here involved) to another brother. The remaining items provided for the ultimate disposition of the corpus of her estate, in the residuum of which her relatives, including those already mentioned, were to share. As to the general scheme for this final disposition it need only be said that it was contemplated (apparently on account of a long lease on certain property) that the executors should hold the estate open for as much as forty years or more.

The petition of the executor alleged, that at the time of the death of the testatrix, her brother, Drayton Sproull, the first beneficiary under item four, was living and was paid monthly the amount therein provided for him until February, 1941, when he died; that after his death and through the month of August, 1941, the sum bequeathed by item four had been paid, one-half each to the two nieces taking thereunder, and these payments had been made with the knowledge and consent of Mrs. Rebecca S. Graves, who it is alleged was not at the time of testatrix's death and not until August, 1941, maintaining her own home or keeping house; that on August 27, 1941, Mrs. Graves "did begin to keep house, maintaining her own home or living quarters, and has continued to do so since said date;" that Mrs. Graves claims that she is now, from said date, entitled to receive monthly, and so long as she shall so continue to maintain her own home, the legacy provided in said item; that the two named nieces contest this claim and assert that

since at the time of the death of the testatrix and the death of Drayton Sproull Mrs. Graves was not maintaining her own home or keeping house, she could not qualify or meet the conditions of the will, and the right to the legacy had been fixed in them. It did not appear from the executrix's petition whether Mrs. Graves was keeping house or maintaining her own home at the time the will was executed, but in the answer filed in her behalf it was alleged that she was not at that time so doing, but that she was then and up to August, 1941, living with her sister. Answer also was filed by the two nieces, Martha Ann Sproull, and Drayton Sproull Mc-Williams, and upon these pleadings which embraced a copy of the entire will the case was submitted to the judge for adjudication of the questions made. By his decree, which is excepted to by Martha Ann Sproull and Drayton Sproull McWilliams, it was adjudged "that the language of item four of said will be and is held to mean that Mrs. Rebecca S. Graves became entitled to the legacy of fifty dollars per month at the time she began to maintain her own home and to keep house, that is on August 27, 1941, and that she will be so entitled to have and receive the said legacy of fifty dollars per month so long as she continues to keep house or maintain her own home."

"1. In the construction of wills, the intention of the testator should be the first and great object of inquiry. And this is to be sought for by looking to the whole will, and not to detached parts of it. 2. Every court must determine for itself, what the intention of the testator is in the particular case before it, and that intention should be carried into effect, provided it be not unlawful. 3. Precedents, or adjudged cases, are of but little authority, and of dangerous application, in deciding upon the intention of a testator; the construction depends so much on each case, upon the character of the testator, the terms he employs, and all the surrounding circumstances." *Cook* v. *Weaver*, 12 *Ga.* 47. See also *Olmstead* v. *Dunn*, 72 *Ga.* 850; *Gaboury* v. *McGovern*, 74 *Ga.* 133, 140; *Almon* v. *Shell*, 147 *Ga.* 800 (95 S. E. 681); *Shoup* v. *Williams*, 148 *Ga.* 747 (98 S. E. 348); *Sumpter* v. *Carter*, 115 *Ga.* 893 (42 S. E. 324, 60 L. R. A. 274); *Comer* v. *Citizens & Southern National Bank*, 182 *Ga.* 1 (185 S. E. 77); *Hungerford* v. *Trust Company of Georgia*, 190 *Ga.* 387 (9 S. E. 2d, 630); Code, § 113-806. The rules of grammatical construction generally gov-

ern, but to effectuate the intention they may be disregarded. *Ardis* v. *Printup*, 39 *Ga.* 648.

As we examine the whole will under review to ascertain the intention of the testatrix in respect to the legacies involved, we reach the conclusion, as did the trial judge, that the testatrix did not mean to set up as a condition that in order for her sister to receive the extra monthly payment (over and above the other monthly payments as to which there is no dispute) she must be keeping house or maintaining her own home at the time of testatrix's death or at the death of Drayton Sproull. The gift was not conditioned as to time, as was true in the *Hungerford* case, supra, where it was pointed out that the bequest there given was to be taken "provided they are living with their present wives at the time of my death." It was emphasized in that case that the status was required in so many words to be fixed as of the date of testator's death. In the instant case the first disposing item gave Mrs. Graves the testatrix's household goods and furnishings, to be hers during life "or so long as she desires to maintain her own home or living quarters." Item 3 provided for her an unconditional life income. While under the Code, § 113-807, the court when called upon to construe a will may hear parol evidence of the testator's circumstances at the time of its execution, none was, as such, before the court in this case; and while neither the petition nor the will itself so disclosed, the answer of Mrs. Graves pointed out that at the time of the execution of the will she was not keeping house or maintaining her own home but was living with her sister, and that this was well known to the testatrix. This was nowhere controverted in the pleadings upon which the judgment in the case is predicated. So the rational view seems to us to be that the testatrix, whose estate was to be kept open for a long number of years, knowing that her sister for whom she wished to provide was then living with another sister, anticipated she might some time wish to keep house and maintain her own home. The legacy as to the household furnishings so indicated, and they were to be by her kept and used "so long as she desires to maintain her own home or living quarters." If this sister should have occasion to leave the household of her other sister and establish her own, it is readily seen that more income than had already in item three been provided might be required; and so anticipating that the brother, Drayton,

might predecease Mrs. Graves, the testatrix, under the whole scheme of whose will it was sought to protect and provide for age before youth, seems to have made this extra provision for Mrs. Graves to assist her in bearing the added financial burdens connected with the maintenance of a separate household, but to be used only if the situation of this sister was such as to call for it. If it should be held that by the use of the word "discontinue" in this item of the will compliance with the condition as to keeping or maintaining her own household at the time of the testatrix's death or at the time of Drayton Sproull's death was required, it is our opinion that the intention of the testatrix, as found in the whole will, would be thwarted.     *Judgment affirmed. All the Justices concur.*