## YERBEY *et al. v.* CHANDLER.

No. 14192.   JULY 15, 1942.

*Tolnas & Middlebrooks,* for plaintiffs.

*Walter G. Cornett, Carlisle Cobb,* and *James L. Hawkes,* for defendant.

GRICE, Justice.   An ejectment suit was filed by Miss Fannie L. Yerbey and others against Mrs. C. T. Chandler.   The land involved is seventeen acres.   At the conclusion of the plaintiffs' evidence the court awarded a nonsuit, to which ruling they excepted.   The third item of the will of Burrell Yerbey, probated June 3, 1862, was in evidence, as follows:   "I give and devise to my daughter-in-law Sarah H. Yerbey, widow, and her four children, Burrell H., Eliza E. L., Rebecca A., and Mary O. Yerbey and her grandson William Ware, being my great-grandson, all constituting one legatee, the following land, to wit [describing it], to be theirs as long as they live on it, and, if one or more of them move away, to belong to those that remain on it; and if they all move away, then the said land is to be divided between my sons Everett and Robert," etc. The land embraced within the description of this devise contained eighteen hundred acres, the seventeen-acre tract sued for being embraced therein.

■ It is contended in the brief of counsel for the plaintiffs that they were entitled to recover by virtue of a prescriptive title. It was the testimony of a witness that the whole eighteen hundred acres was divided between the surviving legatees, and that Mrs. Sarah H. Yerbey received the seventeen-acre tract, took possession of it and gave it to her son, Burrell H. Yerbey, and that he built a house on it, lived therein, and occupied the land until his death on August 2, 1890, there being originally fifty acres, including the seventeen which Mrs. Sarah H. Yerbey gave to Burrell H. Yerbey. The only other evidence of possession is that the plaintiffs in this suit were in possession of the seventeen acres in 1933; that for "four or five years" the place was rented to Heard Jackson by Miss Mary O. Yerbey, who sent the rent therefor to plaintiffs, and that the last named also built a house on it for plaintiffs and paid for it out of the rent. The date when Burrell H. Yerbey's occupancy commenced is not given, and therefore it is not shown for what time he held it, whether for a month, or a year, or for how long. The plaintiffs are not shown to have had possession of it for a sufficient length of time for prescription to ripen. One who claims a prescriptive title has the burden of establishing it. The plaintiffs did not carry the burden of showing adverse possession for the length of time required by the statute, which, when the entry is not under color of title, is twenty years. Code, § 85-406.

■ The plaintiffs further insist that under the item of the will hereinbefore set out, since Burrell H. Yerbey, their ancestor, was one of those who remained on the place until his death, he became vested with at least one share, and hence, independently of the claim of prescriptive title, and even if there had been no partition, the court erred in granting the nonsuit. By an amendment of her plea the defendant asserts that she claims under Mary O. Yerbey, and that "under item 3 of the will of Burrell Sr., set up by plaintiffs herein, the tract of land devised was owned and in possession of Mary O. Yerbey at the time of her death in this county." Therefore the plaintiffs were relieved of proving that testator had title, since both parties claimed under a common grantor. Code, § 33-101. If their ancestor was merely a joint tenant, this would not prevent the plaintiffs from maintaining their action, even though they are not entitled to recover the entire fee. Code, § 33-103. If therefore, under the will of Burrell Yerbey, Burrell

H. Yerbey took title to lands of which the land in dispute was a part, or an undivided interest in them, the heirs at law of the latter should not have been nonsuited.

The bill of exceptions recites that the entire will was in evidence, but only one item of it is in the record that reached this court. Standing alone its meaning is not altogether as clear as it might have been. In construing the provisions of an item of a will, the whole instrument should be examined. In construing a will the intention of the testator is the controlling consideration, and his intention must be ascertained by taking the will, as it is said, "by the four corners," and giving to all parts of it consideration. "In construing a particular item of a will, or a particular clause of an item, the court will view and consider the whole instrument." *Shoup* v. *Williams,* 148 *Ga.* 747 (98 S. E. 348). See *Owens* v. *Citizens & Southern National Bank,* 177 *Ga.* 289 (3) (170 S. E. 196). We are, however, unable to look to the four corners of the will, or to consider any of the attendant circumstances. We do not know whether all the children are mentioned in this item or not; or whether a widow survived; or how many, if any, deceased children with families of their own; or whether or not there was a residuary clause, and if so, what its provision was is not shown. Of the six devisees named in item 3, William Ware died, but moved off the place before his death. The record is silent as to what relation he was to any of the others named, or who were left as his next of kin, and the date of his death. Eliza E. L. Pittman moved away before she died, but the record does not disclose who her next of kin were, or the date of her death. Rebecca A. Yerbey died unmarried about the year 1864, but whether she had theretofore left the place does not appear. Sarah H., Burrell H., and Mary O. Yerbey died, never having removed. In this state of the record it is to be assumed that there is nothing in the other portions of the will that would aid the plaintiffs in upholding their contention with respect thereto.

The controversial portion of item 3 consists of three clauses. The first is, "to be theirs as long as they live upon it." Although devised to several named persons, their names being immediately followed by the words "all constituting one legatee," the clause standing alone would, in our opinion, express the desire that each one's interest in the property should be his or hers so long as he

or she lived upon it. This view is strengthened by what is contained in the second clause, "and if any one or more move away, to belong to those who remain upon it." Under the first clause, therefore, Burrell H. Yerbey's interest in it remained so long as he lived upon it. He did remain, and so did Sarah H. and Mary O. Yerbey; but two of the devisees, William Ware and Eliza E. L. Pittman, moved away and died. The interest of the two last named, under the first clause, like Burrell H. Yerbey's thereunder, was to last only so long as they remained on it. Did their moving away cause the limited estate of Sarah H., Mary O., and Burrell H., who lived on the land until their deaths, to become enlarged into a fee by virtue of the second clause, to wit, "and if any one or more of them move away, to belong to those that remain on it"? In *Kimbrough* v. *Smith*, 128 *Ga.* 690 (58 S. E. 23), it was ruled that a devise of a life-estate, made in distinct terms in a previous item, will not be enlarged into a fee-simple estate by the general language of a subsequent item, where the language and the general context of the will do not clearly and plainly indicate such to be the testator's purpose and intent. The same principle was recognized and applied in *Buchanan* v. *Nicholson*, 192 *Ga.* 754 (16 S. E. 2d, 743), where later decisions of this court were cited. By the use of the words "to belong to" it was only meant that whatever interest in the lands was forfeited by those who moved away should be held in the same manner by those who remained.

The third clause, "and if they all move away, then the said land to be divided between my sons Everett and Robert," etc., need not be examined, since they did not all move away, unless it be for the purpose of aiding in the construction of the other two clauses. It might be argued that the testator having in this limited way provided for the remainder to vest, his intention was thereby manifested that the fee should lodge in those who did not move away. This argument can not prevail in view of the rule that an estate manifestly fixed and devised in one item or clause will not be enlarged by a subsequent clause unless the language and general context clearly and unmistakably discloses such to be the testator's purpose and intent. It must therefore be held that so much of the will as appears in this record (item 3) put no such title in Burrell H. Yerbey, under the facts appearing, as would authorize plaintiffs as his heirs at law to recover.

■ It is also insisted by plaintiffs that it was shown that there had been a voluntary partition, by the legatees named in item 3 of the will, of the land therein devised, followed by possession, and that under this devise, Sarah H. Yerbey receiving a portion that included the land sued for, and afterwards giving it to Burrell H. Yerbey, this was binding on all parties and put title into Burrell H. Yerbey. The only basis for this insistence is found in the testimony of one witness who swore that "the whole 1800-acre place was divided between the surviving legatees named in the third item of the will of Burrell Yerbey, and each of the people named in this item went into exclusive possession of his share or portion of the whole tract, except Rebecca A. Yerbey, and Mrs. Sarah H. Yerbey received this 17 acres in her part and took possession of it, and then gave this 17 acres to Burrell H. Yerbey, her son, and he built," etc. Such title asserted by plaintiffs as was derived from the oral partition among those named in this item must be held to be insufficient. The legatees having only a life-estate therein, their voluntary agreement to partition the land, even if the several parties thereafter went in possession of the portion agreed upon as his or hers, could not, except as aided by prescription, pass the fee thereto. Accordingly, the fact that in such division the land here sued for was given to Sarah H. Yerbey, and by her given to her son Burrell H. Yerbey, conferred upon the heirs at law of the latter no right to maintain ejectment therefor.

■ There is testimony in the record that Burrell H. Yerbey, the ancestor under whom the plaintiffs claim as heirs at law, died in possession of the premises in dispute. Although proof of this fact was prima facie evidence of title in him, yet before heirs at law of a deceased intestate can recover by virtue thereof, they must prove that there was no administration of the estate, or that the administrator assented to their bringing the suit. This was not done in the instant case, and therefore the plaintiffs showed no right to recover merely on account of the fact that Burrell H. Yerbey died in possession. *Greenfield* v. *McIntyre,* 112 *Ga.* 691 (38 S. E. 44).

■ The witness Adams testified that the plaintiffs in this suit were in possession of the seventeen acres in the year 1933. "A plaintiff in ejectment may recover the premises in dispute, upon his prior possession alone, against one who subsequently acquires possession of the lands by mere entry and without lawful right

whatever." Code, § 33-102. With this testimony in the record it was erroneous to grant the nonsuit.

*Judgment reversed. All the Justices concur.*

JENKINS, J. I concur in the result, but I construe the item of the will quoted in the opinion as creating, not a life-estate, but a fee subject to be divested.