YOUNG *et al. v.* YOUNG, executor, *et al.*

No. 15941.   OCTOBER 14, 1947.

698

*Dallam R. Jackson,* for plaintiffs in error.

*J. F. Floyd* and *Lovejoy Boyer,* contra.

DUCKWORTH, Presiding Justice. (After stating the foregoing facts.) "Legacies may be either general or specific. A specific legacy is one which operates on property particularly designated. A gift of money to be paid from a specified fund is nevertheless a general legacy." Code, § 113-808. However, a testator may so charge a money legacy upon a particular fund as to make the legacy follow the fate of the fund. *Tinsley* v. *Maddox,* 176 *Ga.* 471 (13) (168 S. E. 297). A good definition of a specific legacy is found in Harper *v.* Bibb, 47 Ala. 547, 553 : "A specific legacy is one that can be separated from the body of the estate and pointed out so as to individualize it, and enable it to be delivered to the legatee as a thing *sui juris.* The testator fixes upon it, as it were, a label, by which it may be identified and marked for delivery to the owner, and the title to it, as a separable thing, vests at once, on the death of the testator, in the legatee." In Jarmon on Wills (6th ed.), appears the following statement, quoted with approval in *Bailes* v. *Halsey,* 179 *Ga.* 182, 184 (175 S. E. 472) : "A general legacy is a gift of something to be furnished out of the testator's general personal estate; it need not form part of the testator's property at the time of his death." A residuary legacy is "a general legacy into which fall all the assets of the estate after the satisfaction of all other legacies and the payment of all debts of the estate and all costs of administration." Redfearn on Wills and Administration (rev. ed.), 234, § 144; *Henderson* v. *First National Bank of Rome,* 189 *Ga.* 175 (5 S. E. 2d, 636, 128 A. L. 816).

"In construing a will the intention of the testator is the controlling consideration, and his intention must be ascertained by taking the will, as it is said, 'by the four corners,' and giving to all parts of it consideration." *Yerbey* v. *Chandler*, 194 *Ga.* 263 (21 S. E. 2d, 636). See also *Shoup* v. *Williams*, 148 *Ga.* 747 (98 S. E. 348); *Owens* v. *Citizens & Southern National Bank*, 177 *Ga.* 289 (3) (170 S. E. 196). Another rule early announced is that, where the question is in doubt, the courts are not inclined to construe a legacy to be specific. *Morton* v. *Murrell*, 68 *Ga.* 141. As stated in Tifft *v.* Porter, 8 N. Y. 516, and approved in *Bailes* v. *Halsey*, supra, "The presumption is stronger that a testator intends some benefit to a legatee than that he intends a benefit only upon the collateral condition that he shall remain, till death, owner of the property bequeathed."

Unquestionably the will of the testatrix evidences in its entirety an intention to remember all of her children substantially alike in the disposition of the property mentioned in the will, and as to any residue to bequeath it to all of her children with the exception of John Young and Mrs. Cora Hobbs. Omitting three bonds disposed of after the execution of the will, she possessed at her death practically all of the property she sought to dispose of by her will. The designation of her bonds as "Liberty bonds," instead of United States savings bonds as in truth they were, negatives any effort or desire to precisely label, sequester, or identify any bond so as to render it capable of being delivered to one rather than to another legatee among those to whom bonds were bequeathed. While the testatrix did not mention any money in bank or accounts receivable, yet in selling three of her bonds she was evidently aware that she had sufficient funds in her estate, or would have at her death, out of which to pay those deprived of a bond the exact equivalent. She refers in her will to the bonds as being of the denomination of $1000, and it may reasonably be inferred that she intended to bequeath to each of the legatees in items 5, 6, and 7 something which had a value of $1000, that is, she desired to confer upon each a benefit of $1000. Had the testatrix, in items 5 and 7, described or labeled the bonds, as it were, so that particular and definite bonds, as distinguished from bonds generally described and usually available in the open market, could be delivered to the legatees under item 5, and an equally

separable and distinct bond . could be delivered under item 7 to Mrs. Cora Hobbs, were all such bonds owned by the testatrix at her death, such legacies would, under the legal definitions above quoted, have been specific legacies. To illustrate: If the testatrix had willed "a bond which I now own, being a United States savings bond numbered M131316B, the same having been issued on July 1, 1936, and maturing on July 1, 1946, the issue price being $750 and the maturity value being $1000," such a legacy would clearly have been a specific legacy. If such a bond had been sold by the testatrix after so labeling or sequestering it, the legacy would, therefore, be adeemed, which ademption, as stated in the Code, § 113-817, may occur under the following circumstances: "A legacy is adeemed or destroyed, wholly or in part, whenever the testator delivers over the property or pays the money bequeathed to the legatee, either expressly or by implication, in lieu of the legacy given; or when the testator conveys to another the specific property bequeathed, and does not afterward become possessed of the same, or otherwise places it out of the power of the executor to deliver over the legacy." The failure to particularize the bonds bequeathed in item 5 to the four named sons of the testator, and the bond bequeathed in item 7 to Mrs. Cora Hobbs, daughter of the testatrix, forbid their being classified as specific legacies, and, consequently, they do not fail but are payable as general legacies, $1000 to each legatee, out of the general assets of the estate, including the proceeds from the sale of the three bonds on hand, hereinafter referred to, after the payment of debts, if any, and the expenses of administration. These assets, being the "general assets," and to which recourse may be had for the payment of the legacies above mentioned, are: 1. The proceeds from the sale of the three bonds on hand. 2. $4453.35 in bank. 3. $100 collected from open accounts. 4. $2472.60, proceeds from the sale of certain property on the home place of the testatrix. 5. Proceeds from the certificate of participation No. 474. We do not include the $775 collected by the executor as rents which, as ruled by the trial court, properly go to those legatees to whom the lands were devised, and to which ruling no exception is taken.

In item 6 it is plain that the testatrix intended that the legatee, John Young, receive $1000, her "desire" that "one Liberty bond"

be sold being merely the recommendation of a source from which the $1000 might be obtained. The legacy is not a specific legacy which has been adeemed, as contended by the plaintiffs in error, as it does not bequeath a bond so labeled and sequestered as to be distinguished from another bond of a similar kind. It is a demonstrative legacy and does not fail if the subject-matter be not in existence on the death of the testatrix. "A demonstrative legacy is one which designates the fund or property from which it is to be satisfied, but is nevertheless an unconditional gift to the legatee of the amount or value specified. That it names a particular fund or other property from which it is to be satisfied, is considered to be demonstrative of a convenient mode of payment; if that mode fails, the legacy is to be satisfied out of the general assets of the estate. A demonstrative legacy differs from a general legacy in that it does not, in the first instance, abate upon the insufficiency of assets to pay the debts of the estate and the expenses of distribution; it differs from a specific legacy in that there is recourse for its payment from the general assets of the estate in the event of ademption in part or in whole." *Owens* v. *Citizens & Southern Nat. Bank,* 177 *Ga.* 289 (2) (170 S. E. 196) ; *Thomas* v. *King,* 182 *Ga.* 463 (1) (185 S. E. 820). This legacy is also payable out of the "general assets." Since the will may reasonably be construed as showing an intention of the testatrix to bequeath to the six legatees under items 5, 6, and 7 something of the value of $1000 each, and only three bonds remain, a fair and just execution of the will, as found by the trial court, would be to sell the three bonds and place the proceeds in the general assets, and from that fund pay the six legatees under items 5, 6, and 7, $1000 each.

. The contention that the money in bank, $4453.35, though not specifically mentioned in the will, should be treated as part of the residue bequeathed in item 13, rather than be divided between all the heirs, is well taken, except that, along with other parts of the residue, it may be resorted to for the payment of the legacies in items 5, 6, and 7 in the manner hereinbefore pointed out. In item 13 it was willed: "I desire that all other property not included in this will be put up and sold by my executor hereinafter named at my home place publicly, but without any order of court and the proceeds therefrom be divided among my children as fol-

lows: (Naming all the children except John Young and Mrs. Cora Hobbs.)" The money in bank certainly comes within the description, "all other property not included in this will; and although the testatrix directed that the property intended for the children named in item 13 be put up and sold for the purpose of division, the will can not reasonably be construed to require the doing of a useless thing, that is, the selling of that which is already payable in money in a fixed sum, but to require only the sale of "all other property not included in this will," which necessarily has to be converted into cash in order to properly disburse the residue of the estate.

Respecting the inquiry from the executor in his petition as to whether he would be entitled to any commission, an inquiry evidently made in connection with the question whether or not the money in bank, $4453.35, not mentioned in the will, would pass to all the heirs or be distributed under item 13 relating to the residue of the estate, it must be said that, since all the property comes under the provisions of the will, the executor is not entitled to any commission whatever, it being provided by item 15 that "his legacies herein are to be in lieu of any commissions for his acting as executor herein." The trial court so held.

It follows from the above that the court correctly construed the will and properly instructed the executor as to the disposition of the assets, as set out in paragraphs numbered 1 to 5, inclusive, of the judgment.

*Judgment affirmed. All the Justices concur, except Wyatt, J., who took no part in the consideration or decision of this case.*